Don WALDROP, et al.,
Plaintiffs–Appellees,

v.

David C. EVANS, et al., Defendants,

Frank Fodor, M.D., T.G. Smith, M.D.,
Defendants–Appellants.

No. 88–8228.

United States Court of Appeals,
Eleventh Circuit.

April 28, 1989.

Michael E. Hobbs, Sp. Asst. Atty. Gen., Cathy A. Cox, Asst. Atty. Gen., Atlanta, Ga., and Joseph H. Chambless, Harris, Watkins, Davis & Chambless, Emmitte H. Griggs, Macon, Ga., for defendants-appellants.

Charles A. Gower, Columbus, Ga., for plaintiffs-appellees.

Robert B. Remar, Remar & Graettinger, Atlanta, Ga., for amicus curiae, Marilyn Greeson, et al.

Before JOHNSON and CLARK, Circuit Judges, and VINSON,* District Judge.

---

* Honorable Roger Vinson, U.S. District Judge for the Northern District of Florida, sitting by designation.

JOHNSON, Circuit Judge:

This case arises on appeal from the district court's denial of defendants' motions for partial summary judgment based on the doctrine of qualified immunity. 681 F.Supp. 840. The parents of a state prison inmate brought suit against prison medical personnel under 42 U.S.C.A. § 1983, alleging that the prison officials were deliberately indifferent to the inmate's psychiatric needs in violation of the Eighth Amendment. Plaintiffs also alleged two pendent state tort claims. The district court granted motions for summary judgment on the section 1983 claims as to all defendants except two. Those defendants, Drs. Fodor and Smith, appealed. We affirm the denial of their motions for summary judgment.

## I. FACTS

In 1984, Timmy Waldrop pleaded guilty but mentally ill to armed robbery charges and was sentenced to a prison term of five to twenty years. On October 15, 1984, Waldrop was sent to the Georgia Diagnostic and Classification Center ("GDCC") in Jackson, Georgia, for evaluation and treatment of his mental problems. At the time of his arrival at the GDCC, Waldrop had been diagnosed as manic depressive. His mental illness was being controlled with, among other medication, Lithium and Haldol, two drugs commonly used to control this type of disorder. Shortly after arrival, Waldrop was taken off all medication including Lithium.

Waldrop's mental condition deteriorated rapidly. He complained of nightmares, insomnia, and a generally poor mental condition. On November 1, 1984, Waldrop slashed his own forearm, requiring three stitches. On November 4, 1984, Waldrop enucleated or gouged out his left eye. GDCC personnel discovered the injury on November 5, and took Waldrop to the coun-

ty hospital for emergency surgery. Once his physical injuries were treated, Waldrop was transferred to a new facility. On December 6, 1984, while at the Augusta Correctional and Medical Institution in Augusta, Georgia, Waldrop used a prison-issued razor blade to cut his scrotum, losing both testicles. On December 10, 1984, while under restraint in Augusta, Waldrop reached his right eye and damaged it so badly that he lost sight in that eye.

Plaintiffs, Waldrop's parents acting as his guardians, sued a variety of prison officials under 42 U.S.C.A. § 1983, alleging that the doctors and staff who treated Waldrop were deliberately indifferent to his psychiatric needs in violation of the Eighth Amendment. Plaintiffs also asserted pendent state tort claims. The defendants were members of the medical and administrative staffs at both the GDCC and at the facility in Augusta. All defendants filed motions for summary judgment on the section 1983 claims based on the doctrine of qualified immunity. The district court granted the motions of all defendants except Drs. Fodor and Smith. Appellant Fodor is a psychiatrist under contract with the GDCC to treat patients one day a week and to be on call for emergencies. Fodor treated Waldrop for his psychiatric problems while Waldrop was incarcerated at the GDCC. Appellant Smith is a staff physician at the GDCC who is not a psychiatrist. Smith treated Waldrop for his physical problems while Waldrop was at the GDCC. Fodor and Smith's appeals are limited to the issue of qualified immunity.[1]

## II. DISCUSSION

Qualified immunity insulates government officials from personal liability for actions taken pursuant to their discretionary authority. In *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738,

---

[1] This Court has jurisdiction to hear these interlocutory appeals under 28 U.S.C.A. § 1291. *See Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (denial of qualified immunity appealable final order within the meaning of 28 U.S.C.A. § 1291). The standard of review is *de novo*, because the availability of qualified immunity is a question of law. *Id.* at 528, 105 S.Ct. at 2816–17. Additionally, both appellants were acting under color of state law for purposes of this section 1983 action. *See West v. Adkins*, — U.S. —, 108 S.Ct. 2250, 2258, 101 L.Ed.2d 40 (1988) (private physician under contract to provide services to inmates at state prison acted under color of state law for section 1983 purposes).

73 L.Ed.2d 396 (1982), the Court established the test for courts to use in determining whether an official can claim qualified immunity: "[G]overnment officials ... generally are shielded [by the doctrine of qualified immunity] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The right must be sufficiently clear that "in light of preexisting law the unlawfulness [of the official's conduct] must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Plaintiffs have the burden of showing that the officials violated such clearly established statutory or constitutional rights. *See Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983) (per curiam).

▪ Courts evaluate an official's conduct under an objective, reasonable person standard. *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) (standard is what reasonable officer would have believed); *Clark v. Evans,* 840 F.2d 876, 881 (11th Cir.1988) (*Harlow* test objective: whether under the circumstances a reasonable person would have believed actions to be lawful). Qualified immunity is available to government officials "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson,* 107 S.Ct. at 3038. The purpose of these requirements is to ensure that the official is or should be aware of the rights he or she may be violating. *Id.* at 3039 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). The doctrine is intended to balance society's interest in providing a remedy for injured victims and discouraging unlawful conduct against the interest in enabling public officials to act independently and without fear of consequences. *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739–40.

▪ Plaintiffs allege that the defendants violated Waldrop's Eighth Amendment rights. The Supreme Court has held that deliberate indifference by prison personnel to an inmate's serious medical needs violates the inmate's right to be free from cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). This deliberate indifference standard applies to psychiatric needs as well. *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986). Thus, a prison inmate has the right under the Eighth Amendment to be free from deliberate indifference to serious physical or psychiatric needs.

▪ Grossly incompetent or inadequate care can constitute deliberate indifference, *Rogers,* 792 F.2d at 1058 (medical treatment "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference), as can a doctor's decision to take an easier and less efficacious course of treatment. *Id.* Failure to respond to a known medical problem can also constitute deliberate indifference. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 704 (11th Cir. 1985) (per curiam) (pre-trial detainee); *accord Carswell v. Bay County,* 854 F.2d 454, 457 (11th Cir.1988) (pre-trial detainee); *Aldridge v. Montgomery,* 753 F.2d 970, 972–73 (11th Cir.1985) (per curiam). Mere medical malpractice, however, does not constitute deliberate indifference. *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Nor does a simple difference in medical opinion. *See Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.") (citation omitted).

The district court posed the question in this case as "[w]hether it was clearly established in November of 1984, that providing an inmate with inadequate psychiatric care could lead to a violation of that inmate's Eighth Amendment rights." 681 F.Supp. at 846. The court then concluded that he-

cause a prisoner's right to psychiatric care was clearly established under the Eighth Amendment, appellants could not rely on the defense of qualified immunity. *Id.* at 846–47. The district court applied the wrong standard in evaluating appellants' qualified immunity claim, however. The question is not whether deliberate indifference to an inmate's psychiatric needs would violate the inmate's Eighth Amendment rights. The inquiry is more particularized and fact-specific. *Anderson,* 107 S.Ct. at 3039–40. The question is whether a reasonable doctor in the same circumstances and possessing the same knowledge as appellants could have concluded that his actions were lawful, i.e., not deliberately indifferent to Waldrop's psychiatric needs. *See Clark v. Evans,* 840 F.2d at 880; *cf. Anderson,* 107 S.Ct. at 3040.

This Court will consider the entire record, not just the plaintiffs' allegations, in evaluating this summary judgment motion. *See Rogers,* 792 F.2d at 1060 & n. 6 (evaluating entire record available on motion for summary judgment in Eighth Amendment qualified immunity case); *see also Green v. Carlson,* 826 F.2d 647, 651 (7th Cir.1987) (evaluation of entire record consistent with policy goal of insulating public officials from the burdens of trial) (citing *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815, and *Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737); *Trapnell v. Ralston,* 819 F.2d 182, 184 n. 1 (8th Cir.1987) (court may look beyond plaintiff's allegations in evaluating claim of qualified immunity); *but see Bonitz v. Fair,* 804 F.2d 164 (1st Cir.1986) (court can only consider plaintiff's allegations in complaint). The question we address is whether a reasonable doctor, in the position of Drs. Fodor and Smith, could have concluded his actions were lawful under the existing law. Because this is a fact-specific inquiry, we will evaluate the conduct of each appellant individually.

### A. Dr. Fodor

The facts involved in Fodor's treatment of Waldrop are undisputed. Fodor is a psychiatrist employed by the GDCC. Fodor interviewed Waldrop for the first time on October 18, 1984, in order to evaluate Waldrop's mental condition. Waldrop had been scheduled to see Fodor because he had a history of psychiatric problems and because he was taking several drugs, including Lithium, to control those problems. The interview lasted thirty to thirty-five minutes. At the conclusion of the interview, Fodor concluded that Waldrop's psychiatric problems were in remission. Consequently, Fodor stopped Waldrop's medication and ordered that he be observed for any further manifestations of mental illness. Fodor ordered no other measures to protect Waldrop from the effects of this sudden cessation of Lithium and other psychotropic drug treatments.

Fodor interviewed Waldrop again on October 27, 1984, for between ten and fifteen minutes. This interview occurred nine days after Fodor stopped all drug treatments to control Waldrop's mental illness. Dr. Smith, a staff physician at GDCC and the other appellant on this appeal, recommended the interview. Waldrop had been suffering from insomnia, nightmares, and nausea. At the conclusion of this interview, Fodor did not place Waldrop back on medication.

On November 1, Waldrop slashed his left forearm. Fodor was not aware of this act of self-mutilation because the attending physician, Dr. Smith, did not inform him of it. On November 4, Waldrop gouged out his left eye. Fodor saw Waldrop on November 8, and at that time Waldrop had just returned to the GDCC from the county hospital. Fodor placed Waldrop on Haldol and Cogentin, two drugs used to control the psychiatric problems that plagued Waldrop. Fodor did *not* place Waldrop on Lithium, a drug specifically used to combat depression. Fodor saw Waldrop for the last time on November 15, 1984. At that time Fodor interviewed Waldrop for between fifteen and twenty minutes. Fodor did not order any additional medication or emergency measures, but did request another doctor at the GDCC to complete a psychiatric evaluation within a week. Before this evaluation occurred, Waldrop was transferred to another facility.

Plaintiffs focus on Fodor's decisions to take Waldrop off medication and to refuse to give Waldrop Lithium treatments for depression. The controversy boils down to whether Fodor's decisions to remove Waldrop from medication and to restore the medication without Lithium constituted deliberate indifference to Waldrop's psychiatric condition.

Application of qualified immunity is a question of law to be decided by the court. *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985). When a defendant moves for summary judgment based on the doctrine of qualified immunity, the court in general must view the facts in the light most favorable to the plaintiff and determine whether those facts constitute a violation of clearly established law. This case is complicated by the fact that the quality of a doctor's treatment is evaluated according to professional standards. *See generally Rogers*, 792 F.2d at 1058 (whether misdiagnosis of medical condition resulted from negligence or deliberate indifference is a factual question requiring expert testimony). Although all actions taken by Fodor are undisputed, the question of whether these actions constituted grossly incompetent or otherwise deliberately indifferent medical care remains a contested issue. Dr. James B. Craig testified that Fodor's treatment of Waldrop was proper and that Fodor exercised reasonable professional skill and care. Dr. Slaughter, Waldrop's original treating physician, testified that these decisions were cruel and "inhuman." We hold that Fodor is not entitled to summary judgment because he has failed to establish the absence of disputed issues of material fact. We cannot determine, however, whether Fodor's treatment constituted deliberate indifference to Waldrop's serious psychiatric needs because that treatment must be evaluated according to professional standards.

■ Fodor argues that if a doctor follows established medical procedures and actually treats a prison inmate, he has satisfied his obligation under the Eighth Amendment. Fodor argues that although he may have committed malpractice, he was not deliberately indifferent to the inmate's medical needs. Simple medical malpractice certainly does not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. It is also true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation. *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). Hesitation does not mean, however, that the course of a physician's treatment of a prison inmate's medical or psychiatric problems can never manifest the physician's deliberate indifference to the inmate's medical needs. *See Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir.1980) (treatment may violate Eighth Amendment if it involves "something more than a medical judgment call, an accident, or an inadvertent failure"). We reaffirm our position in *Rogers* that grossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference. *See Rogers*, 792 F.2d at 1058. In this case, there is a disputed issue of material fact regarding the quality of care Fodor provided to Waldrop while Waldrop was at the GDCC. Consequently, we affirm the district court's denial of Fodor's motion for summary judgment on this issue.

### B. Dr. Smith

■ The facts involving Dr. Smith's course of treatment are also undisputed. Smith is a staff physician at the GDCC. He is not a psychiatrist. Smith saw Waldrop four times while Waldrop was at the GDCC. The first time was on October 22, 1984, four days after Fodor stopped Waldrop's drug treatments. Smith saw Waldrop because Waldrop had complained of nausea, nightmares, and insomnia. Smith made a notation in Waldrop's medical file and recommended that Fodor, who was a trained psychiatrist, examine Waldrop.

Fodor interviewed Waldrop on October 27, but did not place Waldrop back on his medication. On November 1, 1984, Smith treated Waldrop for a self-inflicted laceration of the left forearm. This incident oc-

curred approximately two weeks after Dr. Fodor had taken Waldrop off his medication. Smith sutured the wound, but did not notify Dr. Fodor. Smith asserted that he felt the laceration was an attention-getting act and not serious enough to merit special treatment. The district court characterized the laceration as a suicide attempt.

Three days later, Waldrop gouged out his left eye. On November 5, Smith performed emergency surgery on Waldrop's left eye. Smith then sent Waldrop to the county hospital for further treatment. Upon Waldrop's return to the GDCC, Smith started Waldrop on Haldol and Cogentin, drugs used to control psychiatric problems. Smith followed the orders and recommendation of Fodor and another psychiatrist at the GDCC in restarting drug treatments without Lithium.

Plaintiffs' main argument is that Smith should have taken some action in response to Waldrop's psychiatric problems after Waldrop slashed his forearm. Smith responded to Waldrop's physical injury by suturing the wound, but took no action regarding his mental condition. As evidenced by the October 22 incident and his notation that Fodor treat Waldrop, Smith knew about Waldrop's psychiatric needs. Smith also knew or should have known that Fodor's decision to take Waldrop off medication increased the risk of a psychiatric breakdown. Given that knowledge, petitioners argue Smith should have taken *some* action in response to Waldrop's psychiatric needs after Waldrop slashed his own arm.

This case is like *Ancata* and *Carswell* in that plaintiffs are challenging the lack of response to a known medical condition. In this case, Smith treated Waldrop for a self-inflicted injury when he knew Waldrop was suffering from severe psychiatric problems. Smith was not a psychiatrist and was therefore unable to evaluate the significance of this act. Nevertheless, Smith failed to notify Fodor or take any other action in response because he felt this was simply an act to attract attention.

The law was clear in 1984 that prison officials have an obligation to take action or to inform competent authorities once the officials have knowledge of a prisoner's need for medical or psychiatric care. *See, e.g., Estelle*, 429 U.S. at 104–05, 97 S.Ct. at 291. Courts have held that failure to notify competent officials of an inmate's dangerous psychiatric state can constitute deliberate indifference. *See, e.g., Colburn v. Upper Darby Township*, 838 F.2d 663, 667–68 (3rd Cir.1988); *Partridge v. Two Unknown Police Officers of Houston*, 791 F.2d 1182, 1186–87 (5th Cir.1986). In this case, Smith took no action. He may honestly have believed that the laceration was done solely to attract attention, and was not indicative of deeper psychiatric problems. But at least since *Anderson v. Creighton*, subjective good faith does not create qualified immunity in these circumstances. The test is objective: whether a reasonable physician in Dr. Smith's position would have realized that he had a duty to take some action in response to Waldrop's psychiatric problems after Waldrop lacerated his own arm. There remains a disputed issue of material fact about whether Smith's failure to notify anyone of Waldrop's initial act of self-mutilation constitutes deliberate indifference to Waldrop's psychiatric needs. Consequently, we affirm the district court's denial of Smith's motion for summary judgment.

## III. CONCLUSION

The district court's denial of appellants' motions for summary judgment based on the doctrine of qualified immunity is AFFIRMED.