The **FLORIDA PARAPLEGIC ASSOCIATION, a Florida not-for-profit corporation, Plaintiff,**

v.

Bob **MARTINEZ, individually and as Governor of the State of Florida; Rebecca Paul, individually and as Secretary of the Department of the Lottery of the State of Florida, Defendants.**

No. 88–0718–CIV.

United States District Court, S.D. Florida.

March 30, 1990.

Wesley F. White, White & Brown, Miami, Fla., for plaintiff.

Thomas A. Bell, Tallahassee, Fla., for defendants.

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT;

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT;

## FINAL JUDGMENT

JAMES LAWRENCE KING, Chief Judge.

This cause comes before the court on defendants' motion for summary judgment, plaintiff's cross-motion for partial summary judgment and plaintiff's motion to amend its complaint.

## I. BACKGROUND

This case arose out of a Florida statute which, as part of the Lottery Act, mandated that all retailers selling Florida lottery tickets make their facilities accessible to the handicapped. *See* Fla.Stat. § 24.112(13) (1987) (repealed)[1]. Subsequently, the Department of the Lottery promulgated a regulation which extended the time within which retailers had to comply with the above Florida statute. *See* Fla. Dep't of the Lottery Rule No. 53 ER 87-36 (January 12, 1988). This rule gave retailers an additional ninety (90) days from the execution of their contracts with the Department of the Lottery to make their facilities handicapped accessible. *See id.*

The plaintiff herein brought suit in state court to challenge this Department of the

---

1. "Each retailer shall provide accessibility for disabled persons on habitable grade levels. This subsection does not apply to a retail location which has an entrance door threshold more than 12 inches above ground level."

Lottery regulation. *See Dignity for the Disabled, Inc. v. The Department of the Lottery, et al.*, No. 88–95 (Fla.Cir.Ct. Jan. 28, 1988) (Second Judicial Circuit, Leon County) (Final Order and Settlement Stipulation). That suit resulted in a settlement agreement between plaintiff[2] and the Department of the Lottery, dated January 26, 1988 and approved by the state court on January 28, 1988. *See id.* According to the terms of the settlement, the Department of the Lottery set forth a rule to substitute for the initial controverted one. *See id.* The substitute rule provided that the Department would not enter into any future contracts with retailers who had not already made their establishments handicapped-accessible, and that retailers who had applied prior to the date of the substitute rule would have ninety (90) days within which to verify their compliance. *See id.*

Subsequent to approval of this settlement stipulation, the Florida Legislature passed a bill on April 12, 1988 which struck the text of Florida Statutes § 24.112(13), and thereby eliminated the handicapped-accessibility requirement. As new § 24.112(13), the legislature substituted the identical handicapped-accessibility requirement[3], but the reenactment was not to go into effect until October 1, 1988, thereby giving retailers until that date to make their facilities accessible. *See* Fla.Stat. § 24.112(13) (1988). Plaintiff then brought suit in federal district court for relief. Only Count I of Plaintiff's complaint, brought under title 42 U.S.C. § 1983, has survived defendant's motion to dismiss. (See this court's order of April 10, 1989 (Order Granting Partial Dismissal, docket number 26).)

In Count I, plaintiff advances that defendants violated its members' fourteenth amendment due process and equal protection rights under color of state law, in violation of title 42 U.S.C. § 1983. Relief sought consists of nominal damages.

## II. PLAINTIFF'S MOTION TO AMEND ITS COMPLAINT

■ Plaintiff moves the court to allow it to amend its complaint to include a claim for nominal damages. This would constitute an amendment to conform to the evidence under Federal Rule of Civil Procedure 15(b). *The motion is properly made* and lies within the discretion of the trial court to grant.

Defendants respond that since plaintiff lacks standing to sue on behalf of its members, it cannot sue for nominal damages either.

Because the court finds that plaintiff has standing, and because the motion is proper, the court will allow plaintiff to amend its complaint to include a claim for nominal damages.

## III. SUMMARY JUDGMENT

### A. STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment in federal court. That rule provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The two parties' motions for summary judgment concede that no genuine issue of material fact exists,[4] and the court may properly proceed to decide the case on the law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).

---

**2.** Defendants do not contest that plaintiff and its members in the state court action are identical to plaintiff and its members in this action.

**3.** The new rule contained additional provisions, but did not alter the initial two sentences which constituted the repealed statutory section. *See* Fla.Stat. § 24.112(13) (1988).

**4.** Plaintiff moves for partial summary judgment—on the issue of liability and not on that of damages. Given that plaintiff's complaint now seeks nominal damages only, no genuine issue of material fact can exist as to the amount of damages.

### B. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff has moved for partial summary judgment—on the issue of liability. Defendants oppose this motion.

In its motion for partial summary judgment, plaintiff realleges its fundamental stance: one, that defendants' actions were not rationally related to a legitimate state purpose, and thus defendants violated plaintiff's members equal protection rights; two, that defendants' delayed implementation of the disputed Florida statutes section. Defendants counter plaintiff's above-outlined allegations with the same arguments that they advance in their motion for summary judgment, analyzed below. The court will analyze the propriety of summary judgment on liability and damages below.

### C. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants advance two arguments for summary judgment: Plaintiff's lack of standing and title 42 U.S.C. § 1983's inapplicability to defendants because of their status.

#### 1. Standing

■ The court must address whether an association has standing to raise the issue of damages to its individual members, where the association has not alleged injury to itself. Plaintiff itself does not have standing. Although plaintiff asserts that it suffered damage—and that it alleged such in its complaint—, the complaint does not state a claim for damage to the plaintiff/association itself. *See* Complaint, Paragraphs 14–17.[5] Plaintiff contends that

the language of the complaint delineates injury to the association itself because plaintiff was a party to the settlement which defendants allegedly violated. While the plaintiff/association could maintain that its rights were violated because of its status as a party to the stipulation[6], the remainder of the complaint makes clear that plaintiff seeks recompense for constitutional injury to its members. *See id.* Because plaintiff complains on this basis, damage must be assessed as it relates to the members of the plaintiff/association.

The relevant question then is whether the plaintiff/association has standing to sue on behalf of its members. Defendants argue that, under *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), an association cannot obtain relief in the form of damages for injuries incurred by the association's members. *Warth* appeared to severely restrict the circumstances under which an association, on behalf of its members, could assert standing. *See id.*

Further Supreme Court precedent, however, has softened the *Warth* test. *See Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *International Union, United Auto., Aerospace and Agricultural Implement Workers of America v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986). The Supreme Court in *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), reworded *Warth*'s associational standing test to allow standing only when "neither the claim asserted nor the relief requested requires the participation of individual members in

---

**5.** For example, Paragraph 14 of the Complaint reads:

> The April 12th bill dissolved vested rights of members of Plaintiff FPA to access to lottery retailers pursuant to Florida Statutes section 24.112(13) as secured, agreed, confirmed, guaranteed, and implemented by the Settlement Stipulation with the Department and Final Order of the circuit court.

Paragraphs 15 ("[m]embers of Plaintiff FPA have been and are being deprived of a right ... secured by the Fourteenth Amendment"), 16 ("Defendant[s] ... have subjected members of

Plaintiff FPA to the deprivation of constitutional rights set forth above"), and 17 ("Defendants ... have acted ... to subject members of Plaintiff FPA to the deprivation of constitutional rights set forth above") contain similar language.

**6.** Plaintiff does allege, in Paragraph 19, that "Defendants' actions were taken in total disregard of the rights of Plaintiff FPA and its members." This statement, however, comes as a summation of the foregoing Paragraphs, see note 5, *supra.*

the lawsuit." *Hunt,* 432 U.S. at 343, 97 S.Ct. at 2441.

The Court's decision in *International Union, United Auto., Aerospace and Agricultural Implement Workers of America v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986), reaffirmed the Court's approach in *Hunt.* In *International Union,* the Court addressed the problematic prong of the *Hunt/Warth* test for associational standing and specifically decided that the nature of a particular claim for damage relief controls whether or not an association/plaintiff has standing to assert damage relief. *Id.* at 287, 106 S.Ct. at 2531. The Court determined that the damage remedy sought there involved a pure question of law, which the district court could dispose of without reference to "the individual circumstances of any aggrieved ... [sic] member." *Id.* Thus, it was not necessary for individual members of the association to participate in the lawsuit and the court allowed the association to proceed on behalf of its members.

Because in this case plaintiff now seeks nominal damages only, the court can determine the damage to members of the plaintiff in a discrete and insular manner, in accord with *International Union.* Plaintiff, therefore, has standing in this lawsuit. *See Hunt,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *International Union,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986). Defendants' motion for summary judgment on this point is denied.

### 2. Defendants' Status Under 42 U.S.C. § 1983

#### a. Defendants in Their Official Capacity

Defendants assert that state officials acting in their official capacity are not "persons" within the meaning of 42 U.S.C. § 1983. Defendants cite to a recent Supreme Court decision: *Will v. Michigan Dep't of State Police,* — U.S. —, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The *Will* case controls interpretation of § 1983 in federal court suits (although it arose in state court). In addition, federal court suits against state officials are governed by another important legal provision, which

applies in this case: the eleventh amendment. The eleventh amendment and the Court's holding in *Will* interrelate; therefore, the court will proceed to examine both the *Will* holding and the eleventh amendment as they relate to this case.

■ The eleventh amendment bars federal court actions against state officials acting in their official capacity. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Parker v. Williams,* 862 F.2d 1471, 1475 (11th Cir.1989). A state can be held liable in spite of the eleventh amendment when it specifically waives its immunity or when sued for injunctive (prospective) relief. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (only prospective relief available for state officials' violation of federal statute). Prospective relief is no longer appropriate here. *See* Order Granting Partial Dismissal, April 10, 1989, docket number 26. The court might undertake to determine whether the State of Florida waived its eleventh amendment immunity when it entered into a specific contract and state court-approved settlement with plaintiff; any waiver of eleventh amendment immunity, however, would not necessarily overcome the holding in the *Will* case.

■ In *Will,* the Supreme Court held that state officials acting in their official capacities are not persons within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police,* — U.S. —, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The Court's reasoning was influenced by and patterned the Court's treatment of immunity issues under the eleventh amendment. *Id.* For example, the Court held that "in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it." *Id.* 109 S.Ct. at 2309. The Court did in fact rely on the eleventh amendment to support its holding throughout the case. *See Will,* 109 S.Ct. 2304 & at 2314–15. But while the *Will* Court appears to rely heavily on eleventh amendment immunity rationale, it does not specifically address the issue of waiver of immunity by

**1002**

a state. In the absence of further guidance from the Supreme Court, this court must assume that the *Will* holding conclusively determined that officials acting in their official capacity are not "persons" within the meaning of 42 U.S.C. § 1983. Accordingly, the court will not attempt to decipher whether the state did intend to waive its immunity under the eleventh amendment here. Therefore, if plaintiff can only assert a damage claim, it cannot sue defendants in their official capacities, and insofar as it seeks to do so, summary judgment is granted for defendants.

### b. Defendants in Their Individual Capacity

■ The eleventh amendment and the *Will* case do not affect plaintiff's ability to sue defendants in their individual capacities. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Parker v. Williams*, 862 F.2d 1471, 1476 (11th Cir. 1989).[7]

Plaintiff satisfies the pleading requirement to state a claim for individual liability as it effectively alleges that defendants, as individuals, acted " 'under color of state law' to deprive [plaintiff's members] of their ... rights without due process [or equal protection] of law." *Scheuer*, 416 U.S. at 235, 94 S.Ct. at 1686. But plaintiff must show more to establish defendants' individual liability.

7. The eleventh amendment presents no bar to suit, as "damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90; *see Parker v. Williams*, 862 F.2d 1471, 1476–77 (11th Cir. 1989).

8. The doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), established that federal courts will strip state officials of eleventh amendment immunity where the actions of those officials contravene the Constitution.

9. The Supreme Court has not elaborated on what constitutes an individual capacity suit, but has distinguished individual from official capac-

■ Under § 1983, individuals may be held liable for otherwise "state" actions where those individuals violate the federal Constitution[8], and plaintiffs seek a nominal damage remedy. *See Scheuer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). The nature of the violation alleged controls whether a suit lies against an official in his or her official or individual capacity. *See Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3105.[9] In an individual capacity suit, the individual charged with liability must have acted in a manner "outside the scope of his respective office or, if within the scope, acted in an arbitrary manner, grossly abusing the lawful powers of office." *Scheuer v. Rhodes*, 416 U.S. 232, 235, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Therefore, the court must consider the substance of plaintiff's § 1983 claim to determine liability.

■ In addition, the court will proceed to the merits of plaintiff's claim at this juncture to assess whether defendants may be entitled to qualified immunity. In individual capacity suits, plaintiff must overcome the hurdle of qualified immunity to subject defendants to individual liability. *See Scheuer*, 416 U.S. at 247–48, 94 S.Ct. at 1691–92; *Waldrop v. Evans*, 871 F.2d 1030 (11th Cir.1989). That doctrine "insulates government officials from personal liability for actions taken pursuant to their discretionary authority." *Waldrop v. Evans*, 871 F.2d 1030, 1032 (11th Cir.1989). The *Waldrop* court elaborated on the law of qualified immunity:

ity suits. For instance, in an official capacity suit, a court may hold "a governmental entity liable under section 1983 only when the entity itself is a 'moving force' behind the deprivation ...; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* (citing *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)). This premise accords with the Court's interpretation of vicarious liability under § 1983. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 692 & n. 57, 693–94, 98 S.Ct. 2018, 2036 & n. 57, 2037–38, 56 L.Ed.2d 611 (1978).

In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Court established the test for courts to use in determining whether an official can claim qualified immunity: "[G]overnment officials … generally are shielded [by the doctrine of qualified immunity] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The right must be sufficiently clear that "in light of preexisting law the unlawfulness [of the official's conduct] must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Plaintiffs have the burden of showing that the officials violated such clearly established statutory or constitutional rights. *See Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983) (per curiam).

*Waldrop,* 871 F.2d at 1032–33. Therefore, the court should properly address the issue of qualified immunity as part of its examination of the facts and merits of plaintiff's claim. *See Scheuer,* 416 U.S. at 247–48, 94 S.Ct. at 1691–92.

## D. THE MERITS OF PLAINTIFF'S CLAIM UNDER 42 U.S.C. § 1983

The court has set forth the facts surrounding this lawsuit above (see Part I, Background). In its complaint, plaintiff alleges that these facts constitute a cause of action against defendants in that

Defendant Governor Martinez and Defendant Secretary Paul, by failing to enforce the provisions of Florida Statutes section 24.112(13) as originally enacted, by failing to adhere to the Settlement Stipulation and Final Order [in the prior state case], and by allowing, condoning, supplying, and assisting lottery retailers who do not provide access to the disabled in the sale of lottery tickets, [have deprived plaintiff's members of their equal protection and due process rights].… Defendant Secretary Paul … agreed to require all retailers to be in compliance by dates certain. Notwithstanding that agreement, and *after* compliance deadlines had passed, the State and Defendants, in bad faith, reneged on their agreement and unilaterally extended compliance deadlines until October 1, 1988.

Plaintiff's Complaint, docket number 1, at 6–8. The essence of plaintiff's complaint strikes at defendants' actions in contravention of the settlement stipulation.[10]

Defendants abandoned the settlement stipulation because the Florida legislature amended the underlying statute. In support of their failure to perform, defendants argue that they had no power to implement a regulation once the legislature had repealed the underlying statute. Defendants make a sound argument. For two reasons, the court will assume *arguendo,* however, that defendants were bound. First, the Settlement Stipulation provides that the parties therein

further agree that all retailer applications received by the Department of the Lottery after the date of the execution of this Stipulation, shall be subject to an amended rule to be filed by the Department which will require compliance with handicap accessibility as set forth herein as a prerequisite to commencement of sale of lottery tickets by that retailer.

*Dignity for the Disabled, Inc. v. The Department of the Lottery, et al.,* No. 88–95 (Fla.Cir.Ct. Jan. 28, 1988) (Second Judicial

---

**10.** Plaintiff's suggestion that defendants somehow violated their rights when the Florida legislature in April 1988 repealed and then reenacted § 24.112(13) is without merit. First, according to the language of the statute, the Florida legislature did not enter into a contract with plaintiff when it passed original § 24.112(13). Therefore, the legislature sought only to perform its policymaking function; "[p]olicies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body." *National R.R. Corp. v. Atchison, Topeka Co.,* 470 U.S. 451, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985). Moreover, these defendants could not be held personally liable for actions taken by the Legislature. In sum, the court grants summary judgment in favor of defendants with respect to any liability for the enactments of the legislature.

Circuit, Leon County) (Final Order and Settlement Stipulation). The stipulation makes no mention of the agreement becoming null should the legislature take further action. Neither did the settlement agreement make the parties' performance contingent upon the continued validity of the underlying statutory section. Both parties did not contemplate that the promise of promulgating the regulations could be thwarted by interim repeal of the initial statute.

Second, and most importantly, it is undisputed that defendants had an obligation to abide by the settlement prior to the statute's repeal. The settlement stipulation went into effect on January 28, 1988 and the legislature repealed the statute over two and one-half months later on April 14, 1988. Plaintiff, then, at least has a claim for the period between the effective date of the stipulation and the date of repeal of the statute. Therefore, the court will assume *arguendo,* for purposes of this motion, that defendants did breach their settlement stipulation with plaintiff.

Defendants' breach, however, must rise to the level of a constitutional (or federal law) violation to sustain an action under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1983 [11]; *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). As a constitutional violation, plaintiff contends that defendants' breach of the settlement stipulation contravened plaintiff's members' equal protection and due process rights.

Moreover, plaintiff must make a stronger showing than that a right was violated. To overcome the qualified immunity of the individual defendants, plaintiff must show that the rights violated were so clearly established that a reasonable person would

have known of their violation. *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

### 1. Equal Protection

■ The thrust of equal protection is that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). To state an equal protection claim, plaintiff must show that defendants' actions bear no rational relation to a legitimate state interest. *See City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (mentally retarded persons subject to lowest level of scrutiny, which is rational basis).[12]

Plaintiff may be able to make out an arguable claim under the *Cleburne* case, in which the Court applied a rational basis test and held that the state violated mentally retarded persons' equal protection rights by passing discriminatory zoning laws.[13] To overcome defendants' qualified immunity, however, plaintiff must demonstrate that defendants' " 'conduct ... violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known.' The right must be sufficiently clear that 'in light of preexisting law the unlawfulness [of the official's conduct] must be apparent.' *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)." *Waldrop v. Evans,* 871 F.2d 1030, 1032 (11th Cir.1989). While plaintiff has made out an arguable claim under the equal protection clause, it has not proved that defendants violated

---

**11.** Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**12.** The rational basis test is applied where the case involves neither a suspect nor heightened

scrutiny (*e.g.,* gender) class, nor a fundamental right. *See City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 440–41, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985).

**13.** The court could make out an argument that defendants violated plaintiff's members' equal protection rights. It could analogize plaintiff's members' status as physically handicapped to the *Cleburne* plaintiffs' status as mentally retarded, and the right to access to publicly sanctioned facilities (this case) to the right to live where one chooses (*Cleburne*).

"clearly established" rights.[14] Therefore, plaintiff's § 1983 action for violation of equal protection against defendants in their individual capacities must fail; and the court grants summary judgment for defendants on this issue.

## 2. Due Process

Two types of fourteenth amendment due process actions exist: Those for procedural violations and those for substantive violations. *See DeShaney v. Winnebago County DSS*, 489 U.S. 189, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). Procedural due process violations lie where defendants have not afforded defendant "fundamentally fair procedures," *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975), before nullifying an underlying property or liberty interest derived from either state law or the U.S. Constitution. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Goss v. Lopez*, 419 U.S. 565, 572–73, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975). To maintain a substantive due process claim, plaintiff must show that defendant's conduct in violating a protected property or liberty right[15], *see Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 223, 106 S.Ct. 507, 512, 88 L.Ed.2d 523 (1985); *Barnett v. Housing Authority of City of Atlanta*, 707 F.2d 1571 (11th Cir.1983), is arbitrary, *see Moore v. City of*

*East Cleveland, Ohio*, 431 U.S. 494, 502–03, 97 S.Ct. 1932, 1937–38, 52 L.Ed.2d 531 (1977), or is of a nature that no set of procedures could remedy it. *See Fundiller v. City of Cooper City*, 777 F.2d 1436, 1440 (11th Cir.1985).

Plaintiff has not specified whether it claims a procedural or substantive due process violation. At first blush, it appears that plaintiff claims under the substantive arm of due process in that plaintiff does not contend that defendants denied its members "protection without according [them] appropriate procedural safeguards, see *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), but that [defendants] w[ere] categorically obligated to [honor their obligations to plaintiff] in these circumstances, see *Youngberg v. Romeo*, 457 U.S. 307, 309, 102 S.Ct. 2452, 2454, 73 L.Ed.2d 28 (1982)." *DeShaney v. Winnebago County DSS*, 489 U.S. 189, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). For instance, in its complaint, plaintiff contends that defendants "reneged on their agreement and unilaterally extended compliance deadlines ... merely as a more expedient course of action." Complaint, Paragraph 19. Nowhere does plaintiff advance that defendant did not provide its members with adequate procedures to safeguard the contents of the stipulation settlement. Indeed, plaintiff seems

---

**14.** Equal protection represents an evolving area of Supreme Court jurisprudence. The *Cleburne* case marks a noteworthy point in that jurisprudence in that the Court declined to expand the categories of heightened scrutiny, but nevertheless applied the rational basis test to invalidate the offensive ordinance. Thus, while plaintiff might make out an argument under the reasoning of *Cleburne*, plaintiff would not have so great a likelihood of success that defendants should have appreciated that their actions violated equal protection.

**15.** The Circuit Courts of Appeal have split over their interpretation of whether rights protected by substantive due process must arise under the Constitution or whether they can stem, as the Court has found for procedural due process, from other sources—federal statutory or state law. *See Schaper v. City of Huntsville*, 813 F.2d 709, 716–17 & n. 8 (5th Cir.1987) & cases cited therein; *Mauriello v. U. of Med. & Dentistry of N.J.*, 781 F.2d 46 (3d Cir.), *cert. denied*, 479 U.S.

818, 107 S.Ct. 80, 93 L.Ed.2d 35 (1986). This court is guided by two factors. First, in a case decided prior to the Supreme Court's consideration of the matter in *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985), the Eleventh Circuit held that non-constitutional property interests are protected by substantive due process. *See Barnett v. Housing Authority of City of Atlanta*, 707 F.2d 1571, 1577 (11th Cir.1983). Second, the majority in *Ewing* "'assume[d] the existence of a constitutionally protectible property right in [the student's] continued enrollment,'" *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 223, 106 S.Ct. 507, 512, 88 L.Ed.2d 523 (1985), which might give rise to a substantive due process right. The court will therefore follow the law of this Circuit and its interpretation of the majority's opinion in *Ewing*, cognizant of Justice Powell's concurring opinion which advanced that the protected right must be one created under the Constitution. *Id.* at 229, 106 S.Ct. at 515 (Powell, J., concurring).

to aver that no matter what procedures accompanied the breach of contract, defendants' "conduct would remain unjustified." *Gilmere v. City of Atlanta, GA.*, 774 F.2d 1495, 1500 (11th Cir.1985). Thus, the court concludes that plaintiff brought this suit claiming deprivation of substantive due process.[16]

As noted above, to prevail on a substantive due process claim, plaintiff must show that, one, defendants violated a protected property right, and, two, that they did so arbitrarily.[17] In accord with plaintiff's general pleading, the court will examine whether defendants may have violated plaintiff's members' contractual rights under the settlement stipulation, in contravention of their property[18] rights under federal or state law[19]. In sum, the court must inquire whether defendants acted arbitrarily to deprive plaintiff's members of property rights so clearly established that a reasonable person would have known of them.

As a guide to whether a clearly established property right existed, the court will examine how other courts have treated contract claims under substantive due process and § 1983. Several courts have considered whether a contract with the state constitutes a property interest the deprivation of which will sustain a substantive due process or § 1983 claim. In *Braden v. Texas A & M University System*, 636 F.2d 90, 93 (5th Cir. Unit A Feb.1981), the Fifth Circuit reasoned that

> [i]f the state had merely breached a contract with Braden he would have had no cause of action under Section 1983. Relief is predicated on a denial of a constitutional right. *Baker v. McCollan*, 443 U.S. 137, 138–40, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Just as Section 1983 does not create a cause of action for every state-action tort, ... it does not make a federal cause out of every breach of contract by a state agency.

Instead of summarily dismissing plaintiff's cause of action, the *Braden* court recharacterized the contract claims as falling under the due process clause. *Id.* at 93. The contract claims became more weighty when the court considered their substantive base: employment and reputational interests. *Id.* Unfortunately, the court did not reach the merits of these claims, as they were found to be time-barred. *Id.* at 93–94.[20] The

---

**16.** It would be inappropriate for the court to assume that plaintiff would have been satisfied with defendants' breach if defendants had afforded plaintiff an opportunity to be heard on the subject of breach. The court, when ruling on summary judgment, must rule on the basis of the pleadings and other papers before it.

**17.** In actions to which the state is a party, it need only show rational relationship to overcome a claim of arbitrariness: "Substantive due process requires only that the City show that its scheme is rationally related to the asserted legitimate governmental purpose." *DiMassimo v. City of Clearwater,* 805 F.2d 1536, 1541 (11th Cir.1986).

**18.** Plaintiff can present no liberty interest under the U.S. Constitution. One could argue that federal constitutional notions of liberty should be extended to include freedom of movement for those physically impaired who require special modes of access. This court, however, is not the appropriate body to fashion such ground-breaking doctrine.

As to plaintiff's liberty interest as created by state law (the Florida Constitution may provide plaintiff some protection because of the physical handicap of plaintiff's members, *see* Fla. Const. art. I, § 2: "No person shall be deprived of any right because of ... physical handicap."),

courts have not extended notions of substantive due process to encompass such state law-based liberty claims. *See Regents of the University of Michigan v. Ewing,* 474 U.S. 214, 223, 106 S.Ct. 507, 512, 88 L.Ed.2d 523 (1985); *Barnett v. Housing Authority of City of Atlanta,* 707 F.2d 1571, 1577 (11th Cir.1983); *Schaper v. City of Huntsville,* 813 F.2d 709 (5th Cir.1987). Therefore, the court will not attempt to address plaintiff's (summary) allegation that defendants violated some constitutional (liberty) right related to its members' handicaps.

**19.** Under § 1983, plaintiff must show a violation of a right "secured by the Constitution and laws" of the United States. In this case, substantive due process acts as plaintiff's federal vehicle under § 1983. The doctrine of substantive due process in turn encompasses an examination of state law under its standards. It is in this context that a court should consider state law concepts of contract as property. Courts must proceed carefully, however, to ensure that those concepts properly fall under the protection of substantive due process.

**20.** Similarly, the Second Circuit declined to find that a contract dispute gave "rise to a cause of action under section 1983." *Costello v. Town of Fairfield,* 811 F.2d 782, 784 (2d Cir.1987). That

*Braden* court, in precedent binding on this court [21], suggested that the substance underlying a contract may help to bring a simple state contract action under the aegis of substantive due process.

The Second Circuit has taken a more stringent view of when a contract may constitute substantive due process property. In *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962 (2d Cir.1988), the court held that certain contracts did not merit procedural due process protection. The *S & D* court surveyed the evolving Supreme Court jurisprudence and concluded that the Court did not intend to constitutionalize all contracts as protected property:

> "To have a property interest in a benefit, a person must have ... a legitimate claim of entitlement to it." ... In one sense, of course, every enforceable contract right can be said to be an "entitlement." As long as a state provides judicial remedies for the enforcement of contracts, either specific performance or damages for breach, every person holds a legitimate expectation that his contractually conferred rights are secure. And whenever a person contracts with a state, breach by the state can be considered a denial of his entitlement to performance of the contract ... the doctrinal implications of constitutionalizing all public contract rights would raise substantial concerns, and we seriously doubt that *Roth* and its progeny portend such a result, although we do not reach the issue today.

844 F.2d at 966. While the Second Circuit generally disapproved constitutionalizing contract claims under due process, the court recognized in a footnote that "rare cases might be imagined where denial of a contract right, if deemed to be Fourteenth Amendment property, would violate substantive due process." *Id.* at 966 n. 4.

Given the context and tone of the body of the opinion, however, the Second Circuit's opinion counsels extreme caution for courts that examine what might constitute a contractual substantive due process right.

The Second Circuit's opinion in *S & D*, however, does not exactly to conform to Supreme Court precedent, which has made peripheral references to contracts as protected by substantive due process. For instance, in *Harrah Independent School Dist. v. Martin*, 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979), the Court did not summarily deny the argument of a tenured teacher who claimed that she had a substantive due process property right in certain clauses of an employment contract. In *Harrah*, the School Board changed a sanction for violations of contract requirements (the Board established a prospective rule establishing contract nonrenewal as a sanction instead of the withholding of pay increases). *Id.* at 198, 99 S.Ct. at 1064. The tenured teacher argued that she could not be discharged under the new sanction. *Id.* The Court rejected her claim [22], but did not explicitly exclude contracts such as hers from consideration as substantive due process property. *Id.* at 198–99, 99 S.Ct. at 1064–65. On the other hand, the Court intimated that the interest advanced should be more "basic" and important, and cited procreation, marriage, and family life. *Id.* at 198, 99 S.Ct. at 1064.

In *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985), the Court

> accept[ed] the University's invitation to 'assume the existence of a constitutionally protectible property right in [the student's] continued enrollment,' and h[e]ld that even if [the student's] assumed property interest gave rise to a substantive right under the Due Process Clause to continued enrollment free from arbi-

court refused to characterize the contract action as falling within due process protection. *Id.*

**21.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

**22.** The Court concluded that the School Board's action was not arbitrary. *See Harrah Independent School Dist. v. Martin,* 440 U.S. 194, 198–99, 99 S.Ct. 1062, 1064–65, 59 L.Ed.2d 248 (1979).

trary state action, the facts of the record disclose[d] no such action.

*Ewing,* 474 U.S. at 223, 106 S.Ct. at 512. While the *Ewing* Court did not hold that the student had a substantive due process right in his possible express or implied contract with the school, it did not reject such a claim out of hand. *Id.* Instead, the Court rested its holding on the school's lack of arbitrary action. *Id.*

Perhaps because it did not undertake to analyze the contract as a substantive due process claim, the *Ewing* Court did not extrapolate on what type of contract might satisfy such a claim. The assumed substantive due process property interest in Ewing lay in the student's "implied contract right to continued enrollment free from arbitrary dismissal." *Id.* The foundation of the Court's exercise of substantive due process review, however, rested upon its assumption in *Board of Curators, Univ. of Mo. v. Horowitz,* 435 U.S. 78, 91–92, 98 S.Ct. 948, 955–956, 55 L.Ed.2d 124 (1978) "that federal courts can review an academic decision of a public educational institution under a substantive due process standard." *Id.* 474 U.S. at 222, 106 S.Ct. at 511. Therefore, the underlying interest in education likely colored the Court's assumed limited review of the implied contract as substantive due process property.

In general, the Supreme Court has counseled that courts proceed with caution when they consider what interests substantive due process protects. For instance, in *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), the Court concluded that

> [a]ppropriate limits on substantive due process come not from drawing arbitrary lines but rather from careful "respect for the teachings of history [and], solid recognition of the basic values that underlie our society." *Griswold v. Connecticut,* 381 U.S. [479] at 501, 85 S.Ct. [1678] at

1691 [14 L.Ed.2d 510 (1965) ] (Harlan, J., concurring).

*Id.* at 502–03, 97 S.Ct. at 1937. In that case, the Court held that the protection of family rights was of sufficient importance to warrant application of substantive due process. *East Cleveland* at 502, 506, 97 S.Ct. at 1937, 1939. The integrity of the family unit and the individual's right to privacy in forming that unit influenced extension of substantive due process.

In sum, a survey of the cases treating contractual breaches as possibly violative of substantive due process reveals that the court should proceed with caution in viewing contracts themselves as property. In each case, the court looked for some underlying substantive significance of the contract to justify substantive due process treatment. Moreover, while the Supreme Court has accorded some contract actions substantive due process peripheral consideration, the Court has also counseled respect and prudence for expansion of that area of constitutional law.

In this case, plaintiff's claim centers on pure breach of contract.[23] The underlying substance of that breach concerns neither employment, reputational, nor family/privacy interests. The contract itself took the form of a settlement stipulation—a court-approved agreement between the parties concluded to resolve a pending action. Even if the court were to construe the contract as of sufficient over-arching importance to justify substantive due process protection [24], such a determination would not overcome the qualified immunity hurdle. As noted above, to satisfy qualified immunity, plaintiff must show that the right was "sufficiently clear that 'in light of preexisting law the unlawfulness [of the official's conduct] must be apparent[,]' *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)[,]" to a reasonable person. *Waldrop v. Evans,* 871 F.2d 1030, 1032 (11th Cir.1989).

---

**23.** The court has already dismissed plaintiff's claim under § 1983 for alleged violation of rights under the Contracts Clause. *See* Order Granting Partial Dismissal, April 10, 1989, docket number 26.

**24.** Arguably, courts should respect and enforce court-endorsed settlements more vigorously than "ordinary" economic contracts between private parties and the state.

In accord with the foregoing survey of the case law in this area, the court cannot say that a reasonable person would have known that she had breached established property rights under substantive due process [25] when she failed to honor the settlement stipulation. Thus, plaintiff's claim under § 1983 for violation of substantive due process must fail, and summary judgment is granted for defendants on this issue, as well.[26]

Accordingly, after careful consideration and review, the court

ORDERS and ADJUDGES that summary judgment is hereby GRANTED for defendants, and final judgment is entered on their behalf. The court further

ORDERS and ADJUDGES that plaintiff's motion to amend its complaint is GRANTED. The court further

ORDERS and ADJUDGES that plaintiff's motion for partial summary judgment is DENIED.

DONE and ORDERED.

---

25. Because plaintiff's claim was brought under § 1983, it appears that the relevant qualified immunity inquiry must concern the federal cause of action which activated § 1983 liability—substantive due process—rather than the simple breach of contract issue.

26. The court notes that plaintiff should have promptly brought a state law-based action against the state to enforce its settlement stipulation in the state court in which that agreement was concluded. Such an approach would have subverted the effect of the *Will* case, the eleventh amendment, and the constraints of federal law. Final judgment here is without prejudice to plaintiff to pursue a state action at this juncture.