**Stephen E. CARSWELL,**
**Plaintiff–Appellee,**
**Cross–Appellant,**

v.

**BAY COUNTY, Defendant,**

**Lavelle Pitts, William Grigsby, Graham Belz, Thomas G. Merrill,**
**Defendants–Appellants, Cross–Appellees.**

No. 87–3710.

United States Court of Appeals, Eleventh Circuit.

Sept. 7, 1988.

Robert P. Gaines, Beggs & Lane, Pensacola, Fla., for Merrill.

Julius F. Parker, Jr., Parker, Skelding, McVoy & Labasky, Tallahassee, Fla., for Pitts, Grigsby & Belz.

Randall C. Berg, Jr., Peter M. Siegel, Florida Justice Institute, Inc., Miami, Fla., for Carswell.

Before TJOFLAT, VANCE and COX, Circuit Judges.

VANCE, Circuit Judge:

This action arising under 42 U.S.C. § 1983 involves the failure to provide proper medical treatment to a county jail inmate. The defendants appeal from a jury verdict in favor of the plaintiff, Stephen Carswell. Carswell also appeals the district court's application of Florida's collateral source rule. For the reasons set forth below, we affirm the district court's judgment.

## I. FACTS

On August 21, 1984 Carswell was committed to the Bay County Jail in Panama City, Florida, as a pre-trial detainee. Carswell was not given a physical examination at the time he entered the jail,[1] but he indicated during the medical screening procedure that he was not suffering from any ailment or taking any medication. At the time he entered Bay County Jail Carswell was 5'11" and weighed approximately 145 pounds.

Over the next eleven weeks Carswell repeatedly requested medical treatment. Complaining of a rash, constipation and significant weight loss, Carswell made numerous written and oral requests for medication and medical attention. Labeled a "complainer," Carswell received the medication he requested, generally milk of magnesia, on some occasions but other requests simply were ignored. On two occasions during this period Graham Belz, a physician's assistant who worked at the jail, examined Carswell. On September 18 Belz prescribed a cream for the skin rash. On October 2 Belz diagnosed Carswell as having tonsillitis and constipation, and prescribed medication accordingly. Carswell, however, continued to complain about health problems.

On November 5, 1984 Carswell was taken to court for arraignment. The public defender observed that the plaintiff "looked like a concentration camp victim." The public defender immediately asked William Grigsby, the jail administrator who had accompanied Carswell to the arraignment, to arrange for medical attention. Despite his own recognition that Carswell was emaciated and needed medical attention, Grigsby testified that upon returning to the jail he simply yelled into a crowded room: "Get this man to see the doctor."

Two days later, on November 7, Belz examined Carswell again. Carswell had then lost approximately fifty-three pounds, and weighed only ninety-two pounds. That evening Carswell was admitted to the hospital where he was diagnosed as a diabetic. Carswell remained hospitalized for approximately two months and eventually recovered.

Carswell brought this action against Bay County, Sheriff Lavelle Pitts, the jail administrator William Grigsby, Graham Belz and Dr. Thomas Merrill, a physician who provided medical services to the inmates

---

1. A prison inspector-investigator employed by the Florida Department of Corrections testified that one of the state regulations governing medical care in correctional institutions required that each prisoner receive a physical examination within seventy-two hours after admission.

pursuant to a contract. The complaint included a section 1983 claim alleging that appellants were deliberately indifferent to Carswell's serious medical needs and pendent state tort claims alleging negligence.[2]

The jury returned a verdict in favor of Sheriff Pitts and against Grigsby, Belz and Merrill on the constitutional claim. The jury found compensatory damages on the constitutional claim to be $10,000. On the state law tort claims the jury found Sheriff Pitts negligent and liable for $10,000 in compensatory damages and found Merrill and Belz negligent and responsible for $40,000 in compensatory damages. The jury awarded no punitive damages. The district court entered judgments of $10,000 against Belz, Merrill and Grigsby, jointly and severally, an additional $40,000 against Belz and Merrill, jointly and severally, and $10,000 against Pitts.

## II. DEFENDANTS' APPEAL

Appellants raise three issues on appeal: (1) whether a physician under contract with the county to provide medical services to inmates acts "under color of state law" so as to be subject to liability under section 1983; (2) whether there was sufficient evidence to support the jury's finding against Grigsby and Belz of "deliberate indifference" to Carswell's medical needs; and (3) whether the judgment should be vacated due to an inconsistent jury verdict. We find that the district court properly ruled on each of these issues.

### A.

■ To maintain an action under section 1983, a plaintiff must establish that the defendant acted under color of state law. *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); *see Polk County v. Dodson,* 454 U.S. 312,

317–18, 102 S.Ct. 445, 449, 70 L.Ed.2d 509 (1981); *Ort v. Pinchback,* 786 F.2d 1105, 1107 (11th Cir.1986). A person acts under color of state law when that individual exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law...." *Classic,* 313 U.S. at 326, 61 S.Ct. at 1043.

Appellant Merrill asserts that as a private physician under contract with the Bay County Jail to provide medical services to the inmates, he was not acting under color of state law. Merrill argues that he is not subject to liability under section 1983 because he had no supervisory or custodial duties in the jail and never treated Carswell. Relying on this court's decision in *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 705 (11th Cir.1985), the district court ruled that state action was present. *See also Ort,* 786 F.2d at 1107 (a private physician who contracted with the state to render services to a prisoner acted under color of state law); *Morrison v. Washington County, Ala.,* 700 F.2d 678, 683–84 (11th Cir.) (doctor who "obtained significant aid from state officials" in making decisions was acting under color of state law), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

This court's position on this issue was recently approved by the Supreme Court in *West v. Atkins,* —— U.S. ——, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). In *West* the Court held that a private physician who is under contract with a state to provide medical care to inmates acts "under color of state law for purposes of section 1983 when undertaking his duties" to treat an inmate. *Id.* 108 S.Ct. at 2258. The Court emphasized that it was simply stating explicitly what it had stated implicitly in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Court recog-

---

**2.** Bay County settled the case and was dismissed from the action prior to trial. Defaults were entered against the remaining defendants for failure to file timely responsive pleadings. The district court later entered default judgments against Pitts and Grigsby. The default judgments later were vacated by the pre-trial order, but the defaults remained in effect. Although a defendant who suffers a default for failing to

respond admits the well-pleaded facts in the complaint and may only contest damages, *see Rudner v. Cabrera,* 455 So.2d 1093, 1096 (Fla. Dist.Ct.App.1984), both parties presented their entire cases at trial. On appeal, the parties have not discussed the effect of the defaults. We therefore do not address any possible district court error in connection with the defaults.

nized, as it had in *Estelle*, that the state has a constitutional duty to provide adequate medical care to its prison inmates. *West*, 108 S.Ct. at 2259. The Court then stated that it was the function of the physicians while working for the state, not the amount of time the physicians spend in performance of their duties or the fact that they may be employed by others to perform similar duties, that determines whether they are acting under color of state law. *Id.* at 2259. We therefore reject Merrill's contention and hold that he acted under color of state law and is liable under section 1983.[3]

## B.

The second issue raised by appellants is whether there was sufficient evidence against Grigsby and Belz to support the jury's finding of deliberate indifference to Carswell's medical needs. Appellants point out that Belz examined Carswell on three different occasions and that Carswell's numerous requests for laxatives and pain relievers were satisfied. Although they did not diagnose Carswell's condition correctly, Grigsby and Belz contend that in light of their efforts, their conduct did not amount to deliberate indifference.

We think the jury properly could find that the acts of Grigsby and Belz constituted deliberate indifference. The evidence in this case established that Grigsby and Belz had knowledge of Carswell's need for medical care. The record indicates that two persons on the jail's staff, Emergency Medical Technician Monroe and Correctional Officer Eldridge, each recognized Carswell's medical problems and informed Belz of Carswell's serious situation. Each time, however, Belz ignored the warnings. Belz also failed to advise Merrill of Carswell's weakening condition. The evidence further established that Grigsby saw Carswell's deteriorating condition during rounds at the jail, received a request specifically addressed to him from Carswell for medical attention and was asked by the public defender to get Carswell to a doctor. Grigsby still did nothing significant to ensure that Carswell received medical attention.

Under section 1983 "knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference." *Ancata*, 769 F.2d at 704. We believe that with evidence of knowledge the jury could have concluded that the failure to provide Carswell with medical care constituted deliberate indifference. We therefore hold that there was sufficient evidence of deliberate indifference by Grigsby and Belz.

## C.

Appellants also argue that the jury's verdict is inconsistent. The jury found that Grigsby, Merrill and Belz were deliberately indifferent to Carswell's medical needs and liable for $10,000 compensatory damages on the constitutional claim. The jury also found that Merrill and Belz were negligent and liable for $40,000 in compensatory damages on the state law claims. Appellants argue that there is "no logical or reasonable way" for the jury to have found that the compensatory damages were $10,000 when caused by the deliberate indifference to medical needs and $40,000 when caused by negligence. Appellants believe that the jury instructions and the verdict form confused the jury and appellants maintain that they alerted the

---

3. The jury found Merrill liable to Carswell under an instruction which required the jury to find § 1983 liability only if it found that Merrill (1) personally participated in the deprivation of Carswell's constitutional rights; (2) had actual knowledge of the challenged conduct and acquiesced sufficiently to establish personal participation; (3) set in motion a series of acts by his subordinate, Belz, that caused him to inflict constitutional injury; or (4) established a policy of permitting Belz to deprive persons in the jail of their constitutional rights. Implicit in the court's charge to the jury was the notion that Merrill could not be held liable in a § 1983 action under the doctrine of respondeat superior for the conduct of Belz, the physician's assistant. "Section 1983 will not support a claim based on a respondeat superior theory of liability." *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Jones v. Preuit & Mauldin*, 851 F.2d 1321, 1323 (11th Cir.1988) (in banc) (Tjoflat, J. specially concurring).

court to the possible confusion on three different occasions.

We believe that the jury's verdict should not be disturbed. We note initially that appellants did not object at trial to the jury instructions and verdict form given by the court. Absent a formal objection, an issue is not preserved for appeal. *Litman v. Massachusetts Mut. Life Ins. Co.*, 739 F.2d 1549, 1557 (11th Cir.1984), *cert. denied,* —— U.S. ——, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988). Regardless of this shortcoming, our review of the record and the jury's verdict reveals no inconsistency. "[T]he Seventh Amendment demands that, if there is a view of the case which makes the jury's answers consistent, this Court must adopt that view." *Aquachem Co., Inc. v. Olin Corp.*, 699 F.2d 516, 521 (11th Cir. 1983); *see Burger King Corp. v. Mason*, 710 F.2d 1480, 1489 (11th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984).

Appellee presents a reasonable explanation for the verdict. The evidence presented at trial described the sequence of events in Carswell's medical treatment. Appellee submits that the jury could have found that Carswell was injured primarily by the early negligence of Merrill and Belz. Then at some point after Carswell had lost a substantial amount of weight, the inaction of Merrill, Belz and Grigsby constituted deliberate indifference. Appellee suggests that the jury's finding of Sheriff Pitts' negligence may be grounded on his general indifference towards the medical care provided at the jail. Because there is a logical explanation for the jury's answers, we will not disturb the jury's verdict.

## III. PLAINTIFF'S APPEAL

■ Carswell's appeal raises the issue of whether Florida's collateral source rule permits recovery of medical expenses from Grigsby as well as Bay County. Prior to trial Bay County and Carswell entered into a settlement agreement. Under the terms of the agreement Carswell dismissed his claim against Bay County and Bay County dismissed its counterclaim under Fla.Stat. § 951.032 for the recovery of medical expenses incurred during Carswell's hospitalization. Because Carswell continued to seek compensatory and punitive damages against Sheriff Pitts and Grigsby, the district court entered an order ruling that the actual payment of Carswell's medical expenses by Bay County operated to reduce any damage award against Pitts and Grigsby.

Carswell argues that under Florida's collateral source rule an injured party's receipt of total or partial compensation "from a collateral source wholly independent of the wrongdoer will not lessen the damages recoverable from the person causing the injury." *Janes v. Baptist Hosp. of Miami, Inc.*, 349 So.2d 672, 673 (Fla.Dist.Ct.App. 1977), *cert. denied*, 355 So.2d 512 (Fla. 1978). He maintains that Grigsby and Bay County should be viewed as independent tortfeasors.

Florida law, however, limits the application of this rule in order to prevent "an undeserved and unnecessary windfall to the plaintiff." *Florida Physician's Ins. Reciprocal v. Stanley*, 452 So.2d 514, 515 (Fla.1984). Rejecting Carswell's collateral source claim, the district court noted that Florida's common law collateral source rule only operates when the collateral benefits are earned in some way. *Id.; see Winston Towers 100 Ass'n, Inc. v. De Carlo*, 481 So.2d 1261, 1262 (Fla.Dist.Ct.App.1986). The district court concluded that Bay County's payment of medical expenses was not earned because the county was entitled by statute to recover the medical payments.[4] We believe that the district court properly applied the collateral source rule. Even if Grigsby and Bay County are not viewed as

---

**4.** The district court also concluded that the medical payments by Bay County could be viewed as a settlement by a joint tortfeasor and that under Fla.Stat. § 768.31 the damages against Grigsby would be reduced by the terms of the settlement. *See Brown v. United States*, 838 F.2d 1157, 1161–62 (11th Cir.1988) (where two parties are liable for the same injury the claim against the party who has not settled must be reduced by the amount of any settlement with the other party); *Scheib v. Florida Sanitarium & Benevolent Ass'n*, 759 F.2d 859, 863 (11th Cir.1985).

joint tortfeasors, Florida's limitation on the collateral source rule bars the recovery sought by Carswell. The amount of Bay County's medical payments therefore reduces the damage award against Grigsby.

## IV. CONCLUSION

For the foregoing reasons the district court's decision is
AFFIRMED.