Robert Dewayne HERNDON, Plaintiff,

v.

Bobby K. WHITWORTH, et al., Defendants.

Civil Action No. 1:93–cv–1694–HTW.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 28, 1995.

Franklin Hardaway Thornton, Office of Franklin H. Thornton, LaGrange, GA, for plaintiff.

James Edward Dearing, Jr., Dearing & Klauber, Atlanta, GA, for defendants.

## ORDER OF COURT

HORACE T. WARD, Senior District Judge.

This matter is currently pending before this court on defendants' motion for summary judgment. In this action, plaintiff claims that defendants have violated 42 U.S.C. § 1983—more specifically, that defendants have subjected him to cruel and unusual punishment in violation of the Eighth Amendment.

### FACTS

In 1986, plaintiff was convicted of armed robbery and incarcerated at the Georgia Industrial Institution ("GII") in Alto, Georgia. In March of 1987, plaintiff was transferred to the Youthful Offender Correctional Institution ("YOCI") in Hardwick, Georgia, where he remained until December of 1988.

Plaintiff suffers from epilepsy, a fact known to officials at GII, YOCI, and Metro Correctional Institution ("Metro C.I.") in Atlanta, Georgia, where he subsequently was transferred to from YOCI. While at YOCI, the medical staff there gave plaintiff the wrong medicine for a period of three to four days. Instead of Tegretol, plaintiff was given Trental. As a result, plaintiff suffered several epileptic episodes. When the facility discovered the error, it was corrected and plaintiff was returned to Tegretol. Plaintiff filed a grievance with the Georgia Department of Corrections regarding the above incident and personally talked with defendant Grady Lewis, the Warden of YOCI. Plaintiff also testified that he had a hard time getting his medication on time at YOCI and that the facility generally provided him with inadequate medical care.

In December of 1988, at plaintiff's request, he was transferred to Metro C.I. Plaintiff has testified that he also received improper medical treatment at Metro C.I. For example, officials were late in giving him his Tegretol levels and once gave him a generic version of Tegretol which caused him to have a seizure.

Plaintiff was transferred to the South Carolina Department of Corrections in Aiken, South Carolina in July or 1991 and was released from confinement in July of 1993.

## DISCUSSION

### A. Standard For Summary Judgment

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. *Carlin Communication, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir.1986); *Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983); Fed.R.Civ.P. 56(c). To determine if the moving party meets its burden of proof, the court must view all evidence and inferences to be drawn from it in a light most favorable to the party opposing the motion. *Carlin Communication*, 802 F.2d at 1356; *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983).

The Supreme Court has addressed the burdens of proof which each party must carry on a motion for summary judgment and stated that:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quotation omitted). The nonmoving party is required to identify specific facts which demonstrate that there is a genuine issue for trial and may not rest on the allegations or denials in its pleadings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, in order to survive a motion for summary judgment, the non-moving party need only present evidence from which a jury might return a verdict in his or her favor. If he or she does so, there is a genuine issue of fact that requires a trial. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514.

B. *Plaintiff's Eighth Amendment Claim*

In order to make out a claim under 42 U.S.C. § 1983, a party must show that he or she has been deprived of a federally protected right. Here, plaintiff argues that he was deprived of his Eighth Amendment rights by not being provided adequate medical treatment.

To establish a violation under the Eighth Amendment for inadequate medical treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir.1991) (quotation omitted).

Incidents of negligence or malpractice, however, "do not rise to the level of constitutional violations." *Id.* In addition, difference of medical opinion does not constitute deliberate indifference. *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir.1989). Failure to respond to a known medical problem, though, can constitute deliberate indifference under some circumstances. *Id.* However, a defendant "'must *purposefully ignore or fail to respond* to a prisoner's pain or possible medical need in order for deliberate indifference to be established.'" *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1191 (11th Cir.1994) (quotation omitted) (emphasis in original).

Implicit in the *Estelle* "deliberate indifference" standard is the requirement of knowledge of the plaintiff's particular medical condition to establish intent or "'a sufficiently culpable state of mind.'" *Id.* (quotation omitted). Deliberate indifference also requires the defendant's conduct to be egregious and evidence "'obduracy and wantonness.'" *Brown v. Thompson,* 868 F.Supp. 326, 331 (S.D.Ga.1994) (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1080, 89 L.Ed.2d 251 (1986)). The conduct must involve "wanton infliction of unnecessary pain." *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291.

With respect to his time at YOCI, plaintiff's primary complaint is that, for three or four days in January of 1988, the pharmacy gave him the drug Trental instead of Tegretol. Plaintiff testified that he specifically told the staff nurse that the proper drug was Tegretol. As a result of being given the wrong drug, plaintiff suffered several epileptic episodes.[1] Plaintiff also testified that he had a "hard time" getting his medication on time from the staff at YOCI.

In addition, plaintiff contends in his statement of material facts that defendant Mary Esposito of Metro C.I. was indifferent to his medical needs. In support of this contention, plaintiff cites ¶ 12 of his affidavit, which states: "Throughout my time at Metro, I was

---

1. Plaintiff acknowledges, though, that officials at YOCI deserved credit in connection with the Trental/Tegretol mix-up in that they focused on his safety and the fact that Trental would not hurt him.

continually complaining of my mistreatment and on several occasions wrote letters to Mary Esposito, Warden of Metro." However, he offers no evidence indicating that defendant Esposito was indifferent—much less deliberately indifferent—to his medical condition. Moreover, it is unclear whether this affidavit testimony relates to a claimed indifference to his medical needs or a more generalized complaint that he was not being treated fairly as a result of his epilepsy.

Plaintiff concedes that officials at Metro C.I. gave him medication to prevent him from having seizures, but he claims that a generic brand of Tegretol that he was given on one occasion—Epitol—was not effective. As a result of being given Epitol on January 4, 1990, plaintiff had a seizure.

Plaintiff also alleges that he was not adequately monitored and that he was harassed as a result of his special medical needs. On the monitoring issue, plaintiff testified that his Tegretol level was not being "done" (tested) every six months as plaintiff claims was proper. Despite the fact that a doctor affiliated with Metro C.I. ordered that a Tegretol level be done in October of 1989, officials at Metro C.I. did not have the level done until late December 1989. Plaintiff, however, has not produced any evidence that such a delay amounts to negligence—much less deliberate indifference. Further, while plaintiff claims generally that his medication was not administered properly, he acknowledges that prison officials did not ignore him or withhold medication from him.

As for the claimed harassment, plaintiff testified that he was written up in disciplinary reports on January 11, 1989, as a result of his behavior during seizures. Plaintiff also testified, though, that the officer who wrote the reports was unaware that plaintiff was having a seizure. Such unawareness is consistent with plaintiff's statement that he has "petit mal" epilepsy and that his seizures do not involve convulsions or shaking; during his seizures, plaintiff testified that he can appear "quite normal." Plaintiff also has stated generally that he was teased or threatened as a result of his epilepsy.[2] However, plaintiff has not provided any specific evidence of such conduct or its relevance to his claim that his medical treatment was so shocking as to violate the Eighth Amendment.[3]

In sum, after viewing the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff, this court does not believe that the above evidence can reasonably support a claim for deliberate indifference under the Eighth Amendment. Plaintiff's deposition testimony indicates that he believes the defendants acted negligently and did not treat him fairly. Mere negligence or even malpractice, however, is not sufficient to constitute an Eighth Amendment violation. *Harris*, 941 F.2d at 1505. A mere difference in medical opinion also will not suffice. It cannot reasonably be said that the officials' conduct at YOCI and Metro C.I. was " 'so grossly incompetent, inadequate, or intolerable so as to shock the conscience or to be intolerable to fundamental fairness.' " *Waldrop*, 871 F.2d at 1033 (quotation omitted). In short, this court finds that there do not exist any genuine issues of material fact and that defendants are entitled to judgment as a matter of law.

THEREFORE, after due consideration, this court GRANTS defendants' motion for

**2.** Plaintiff stated that, as a result of being uneducated with respect to epilepsy, officers at Metro C.I. believed he was faking his seizures, which allegedly led to his being teased and threatened.

**3.** Nor can it be said that defendants have failed to respond to a known medical problem. The "failure to respond" line of cases ordinarily involve situations where a prisoner or detainee is in dire need of medical care and that care is completely ignored. *See, e.g., Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 702 (11th Cir.1985) (despite symptoms of swelling, inability to sleep, chills, lower back pain, tingling and numbness in his hands, hyperventilation, severe back and leg pain, double vision, and other problems, prison officials did little or nothing to evaluate defendant's medical needs and refused to refer him to non-staff specialist without a court order); *Carswell v. Bay County*, 854 F.2d 454, 455 (11th Cir.1988) (despite skin rash, significant weight loss, and numerous requests for medication and medical attention, many of his requests simply were ignored).

summary judgment[4] and DIRECTS the clerk of court to DISMISS this action.[5]

SO ORDERED.

4. Defendants also filed a motion for extension of time to file their summary judgment motion as a result of a delay in the taking of plaintiff's deposition. However, defendants filed their summary judgment motion prior to the close of discovery, thus such motion was timely even without an extension. Therefore, defendants' motion for an extension is DISMISSED as MOOT.

5. As a courtesy to the clerk of court, this court advises the clerk that this Order terminates entry nos. 18 and 19 on the docket sheet.