[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 22, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12313
Non-Argument Calendar

_____

D. C. Docket No. 05-00131-CV-RWS-2

GERALD S. BLANCHARD, JR.,

Plaintiff-Appellant,

versus

WHITE COUNTY DETENTION CENTER STAFF, et al.,

Defendants,

NURSE CHRISTY WOODRUFF,
DR. CHARLES WHITE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 22, 2008)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Gerald S. Blanchard, Jr., a Georgia prisoner proceeding pro se, appeals the district court's entry of summary judgment in favor of defendants Charles White and Christy Woodruff in his 42 U.S.C. § 1983 action alleging that he received inadequate medical treatment. After review, we affirm.[1]

## I. BACKGROUND

Blanchard's lawsuit covers two periods of incarceration as a pretrial detainee. From April to October 2004, Blanchard was an inmate at the White County Detention Center ("WCDC"). From May 2005 until February 2006, Blanchard was re-incarcerated at the Lumpkin County Detention Center ("LCDC").[2] While incarcerated at each facility, Blanchard was treated by defendant Dr. Charles White, who served as the medical director for both WCDC and LCDC.[3] Blanchard was also treated by defendant Christy Woodruff, a nurse

---

[1]Blanchard also appeals the denial of various discovery motions, motions for appointment of counsel and motions to amend his complaint, as well as the dismissal of his retaliation and access-to-court claims against the White County Detention Center, the Lumpkin County Detention Center and the jail administrators at both facilities pursuant to 28 U.S.C. § 1915A. Blanchard's arguments as to these rulings are without merit and do not warrant further discussion.

[2]Blanchard's second incarceration began at WCDC, but at some point Blanchard was transferred to LCDC.

[3]Dr. White also had treated Blanchard outside of jail as his family physician and had prescribed Neurontin and Wellbutrin for Blanchard, among other medications, within a month of Blanchard's incarceration.

practitioner at both WCDC and LCDC.  Dr. White and Nurse Woodruff are employed by Georgia Correctional Health, which provides medical services to both WCDC and LCDC.

Blanchard suffers from a seizure disorder.  When incarcerated in April 2004, Blanchard was taking 800 mg of Neurontin three times a day to control his seizures.  Blanchard entered WCDC with a supply of Neurontin provided by his family, which Dr. White and Nurse Woodruff administered.  However, Blanchard was initially given 800 mg only once a day.  When Blanchard complained, the dosage was increased to three times a day until the Neurontin ran out.

On April 19, 2004, Blanchard was seen by Dr. White for an intake screening.  Blanchard reported his seizure history: (1) the last seizure occurred a year and a half ago, and (2) he was taking Neurontin.  Neurontin, however, was not on the medical formulary that listed the medications covered by Georgia Correctional Health.  If a non-formulary medication is prescribed, the inmate or his family is responsible for the cost of filling the prescription.  When Blanchard stated that he could have a family member fill the prescription outside WCDC, Dr. White wrote Blanchard a prescription for Neurontin and instructed Blanchard to have it filled.

During this same visit, Blanchard indicated that he had a history of mental

3

health issues, including anxiety and depression. Dr. White prescribed Blanchard 20 mg per day of Prozac, but then switched the prescription to Wellbutrin. On April 21, 2004, at Blanchard's request, the dosage of Wellbutrin was increased. On April 22, 2004, Blanchard reported hearing voices. Blanchard refused mental health treatment by prison medical staff and requested outside mental health care, which was denied. Blanchard saw Nurse Woodruff on April 26, 2004 complaining of anxiety and depression and requesting an increase in his Wellbutrin dosage. Nurse Woodruff continued Blanchard's medications while they awaited Blanchard's mental health records and encouraged Blanchard to attend weekly group therapy sessions at the prison.

In May 2004, Blanchard again sought medical treatment. Blanchard reported that he was unable to get his family to fill the Neurontin prescription and complained of withdrawal symptoms. Dr. White, however, observed no indications that Blanchard was suffering from withdrawal or had experienced a seizure.

Dr. White avers that he prescribed phenytoin, a substitute medication for seizures that was on the formulary. However, Blanchard contends that he was not given a substitute medication. According to Blanchard, he was given no other seizure medication for the next three-and-a-half months he was housed at WCDC.

4

However, Blanchard admits that he did not suffer any seizures while at WCDC. Blanchard does complain that he had withdrawals from the Nuerontin medication.

Throughout May 2004, Blanchard complained of anxiety and depression. Dr. White and Nurse Woodruff continued to prescribe Prozac and, at times, Trazodone. Dr. White and Nurse Woodruff also continued to recommend that Blanchard attend the prison's weekly group therapy sessions.

Blanchard was released from WCDC in October 2004, but was re-incarcerated at LCDC in May 2005. While not incarcerated, Blanchard was treated by Dr. Suss, who lowered Blanchard's Neurontin prescription to 800 mg once per day.

On May 25, 2005, Nurse Woodruff saw Blanchard for his medical screening at LCDC. Blanchard reported that he felt suicidal, had recently been hospitalized and was taking Prozac, Neurontin, Lithium and Doxipen. Blanchard continued taking these medications at LCDC. Nurse Woodruff also arranged for Blanchard's bottle of Neurontin at a local mental health center to be delivered to the prison so he could continue taking it.

Blanchard contends that he suffered a seizure on May 31, 2005. On June 3, Blanchard was seen by Dr. White. Blanchard complained that his Neurontin dosage was too low. Although Dr. White found no indications of a seizure, he

5

increased Blanchard's Neurontin dosage to 800 mg twice a day.

According to Blanchard, he was given Neurontin for two or three weeks and then "for some reason it was stopped for about a week and I went through withdrawals from that and then it was restarted for like another week and then it was just stopped completely." Nurse Woodruff told Blanchard that the reason the Neurontin was stopped was because it was "a very expensive medication" and was not on the formulary. Nurse Woodruff advised Blanchard that he would need to have his family bring him Neurontin. Dr. White wrote Blanchard a Neurontin prescription. However, Blanchard's family could not afford Neurontin and did not fill the prescription for him. According to Blanchard, each time his Neurontin was stopped, he experienced two weeks of withdrawal symptoms, including sleeplessness, shakes, sweating, and "skin crawls." Blanchard was not given any seizure medication after July 2005 until October 8, 2005, when Blanchard had a seizure and Dr. White's successor prescribed Dilantin, which is also a seizure medication.[4]

_____

[4]Dr. White's services at both jails ceased in late July 2005. Nurse Woodruff's services at both jails ceased on October 1, 2005. In his affidavit submitted in opposition to summary judgment, Blanchard claims he had multiple seizures after July 18 during which he would shake uncontrollably and urinate. This statement contradicts Blanchard's prior deposition testimony that he had only two seizures while incarcerated, one at the end of May 2005 and the other in October 2005, after Dr. White and Nurse Woodruff were no longer providing treatment. Due to this unexplained and direct contradiction, we disregard this statement in Blanchard's subsequent affidavit in evaluating whether summary judgment was proper. See McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) (explaining that a subsequent affidavit

During the June 3, 2005 visit, Blanchard also complained of anxiety and contended that his medications were not working. Blanchard's Prozac prescription was continued and his Trazodone dosage was increased. Blanchard continued to take both Prozac and Trazodone without further complaint until he was released in October 2005. There is no indication in Blanchard's prison medical records that his mental health condition worsened during this time.

Also on July 18, 2005, Blanchard was treated by Dr. White and Nurse Woodruff for a broken tooth. Dr. White examined the tooth, which appeared abscessed, and recommended extraction. According to Dr. White and Nurse Woodruff, Blanchard initially refused tooth extraction. However, Blanchard contends that he wanted the tooth extracted and was told he would be put on the list to see a dentist. Meanwhile, Blanchard was given antibiotics and ibuprofen.

On July 27, 2005, Blanchard filed an "Inmate Event Report," complaining about the problems with his tooth and requesting to have the tooth extracted. On September 1, 2005, Nurse Woodruff arranged for Blanchard's tooth to be extracted by Dr. Trent Conner, and the extraction was performed on September 29, 2005.

During the approximately two months Blanchard waited for a tooth extraction, Blanchard was in pain and his jaw became swollen. Blanchard was

that, without explanation, contradicts prior deposition testimony cannot be used to create a genuine issue of material fact).

7

given antibiotics three times. Each time, his tooth would "get better for about a week or so and then it would swell up again."

Blanchard filed this action, alleging, <u>inter alia</u>, that Dr. White and Nurse Woodruff violated his Fourteenth Amendment right to adequate medical care. The district court granted the defendants' motion for summary judgment, concluding that, even assuming Blanchard had established a serious medical need, he did not show that Dr. White and Nurse Woodruff were deliberately indifferent to his medical conditions. Specifically, the district court found that "[a]t best, the evidence shows that Plaintiff would have preferred a superior level of treatment and more effective medication," which did not rise above allegations of negligence. Blanchard filed this appeal.

## II. DISCUSSION

On appeal, Blanchard argues that he presented sufficient evidence from which a jury could find deliberate indifference by Dr. White and Nurse Woodruff.[5]

Deliberate indifference to a pretrial detainee's serious medical needs violates the Fourteenth Amendment Due Process Clause. <u>Goebert v. Lee County</u>, ___ F. 3d

---

[5]"We review <u>de novo</u> a district court's ruling on summary judgment, applying the same legal standards as the district court." <u>Mathews v. Crosby</u>, 480 F.3d 1265, 1268 (11th Cir. 2007). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, "demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." <u>Id.</u> at 1268-69 (quotation marks omitted).

___, 2007 WL 4458122, at *11 (11th Cir. Dec. 21, 2007) (explaining that the standards that govern an Eighth Amendment claim govern a pretrial detainee's claim under the Fourteenth Amendment).  To show deliberate indifference, the detainee must show that: (1) the detainee had a serious medical need; (2) the prison official acted with deliberate indifference to that serious medical need; and (3) the prison official's deliberate indifference caused the detainee injury.  Id.

The district court concluded that Blanchard failed to present evidence of the second element – deliberate indifference – and, at most, showed mere negligence.  To show deliberate indifference, the subjective component of the claim, the inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."  Id. (alterations and quotation marks omitted).  Although "inadvertent or negligent conduct in diagnosing or treating a medical condition will not state a constitutional violation," Barfield v. Brierton, 883 F.2d 923, 938 (11th Cir. 1989), "knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference."  Carswell v. Bay County, 854 F.2d 454, 457 (11th Cir. 1988) (quotation marks omitted).

When the deliberate indifference claim turns on a delay in treatment, we

9

consider "(1) the seriousness of medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Goebert, at *12. When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is "minimally adequate." Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991). We have held, for example, that a doctor's "failure to administer stronger medication . . . pending the arrival of [an] ambulance . . . [was] a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983." Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995). Deliberate indifference is not established where an inmate received care but desired different modes of treatment. Hamm v. Dekalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).

Here, even when viewed in the light most favorable to Blanchard, the evidence presented does not show deliberate indifference to Blanchard's medical needs. With regard to Blanchard's seizure disorder, the evidence shows that, at Blanchard's request, Dr. White and Nurse Woodruff prescribed Blanchard his preferred seizure medication of Neurontin and dispensed it when it was available. There is no evidence that Blanchard's condition worsened when his preferred medication ran out or when his family failed to refill it. Indeed, Blanchard's only complaint is that he experienced symptoms of withdrawal when he could not

10

obtain Neurontin. There is no evidence that Blanchard asked for or was willing to accept a substitute seizure medication on the medical formulary during the period he claims to have had withdrawals.

As for his anxiety and depression, it is undisputed that Dr. White and Nurse Woodruff consistently prescribed Blanchard Prozac and Trazodone, even increasing the dosage of Trazodone when Blanchard complained of anxiety, and urged Blanchard to attend the weekly group therapy sessions. There were no other signs that his mental condition worsened while on these medications. Under the circumstances, the refusal to refer Blanchard for outside mental health treatment was not deliberate indifference.

Finally, as to Blanchard's abscessed tooth, Blanchard was given antibiotics and pain relievers for a little over two months until the tooth was extracted. After completing a course of antibiotics, Blanchard's tooth would improve for a week or two and then become painful and swell again. Blanchard does not dispute that Nurse Woodruff prescribed medications each time the infection resurfaced. Under the circumstances, defendants' conduct as to Blanchard's tooth does not rise to the level of deliberate indifference.

**AFFIRMED.**