[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-14453
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 26, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00499-CV-J-32-TEM

MICHAEL J. LEPPER,

Plaintiff-Appellant,

versus

HIEP NGUYEN,
M.D., C.H.O.,
DR. NIELDS,
MICHAEL WILLIS,
Asst. Warden,
STEVEN SINGER,
Warden,

Defendants-Appellees,

D. PIPH, etc., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 26, 2010)

Before BARKETT, HULL and FAY, Circuit Judges.

PER CURIAM:

Michael J. Lepper, an inmate of Columbia Correctional Institution ("CCI"), pro se brought this 42 U.S.C. § 1983 action against CCI's Warden Steven Singer, Assistant Warden Michael Willis, and Chief Health Officer Dr. Hiep Nguyen, as well as Dr. William Nields, a Senior Staff Physician at the Florida Department of Corrections' Reception and Medical Center ("RMC"). Lepper alleged the defendants were deliberately indifferent to his serious medical needs by denying him access to emergency medical care and pain medication after he suffered a serious hand injury. The district court granted the defendants' motion for summary judgment, and Lepper appealed.[1] After review, we affirm.

## I. BACKGROUND

### A. Facts

On July 8, 2007, Lepper was exercising and "shadow boxing," and he accidentally struck a wall with his right hand. He notified an officer and asked for emergency medical treatment. The officer immediately escorted Lepper to CCI's

---

[1]"We review the grant of summary judgment de novo, considering all evidence and reasonable inferences drawn therefrom in the light most favorable to the non-movant." Waters v. Miller, 564 F.3d 1355, 1356 (11th Cir. 2009).

medical department, where his hand was promptly examined by Nurse D. Piph.

Nurse Piph filled out a "fracture assessment" form, dated July 8, 2007 at 11:30

a.m., stating that Lepper's hand had "Discoloration" and "Deformity," and that

swelling was "Mild." The fracture assessment form also stated that Lepper

reported no pain, but numbness and crepitus, and that he was "able to move

fingers."[2] It concluded, "Injury – R/O [rule out] fracture vs. Dislocation."

According to Lepper, Nurse Piph "noted extreme swelling, bruising, and what

appeared to be a bone about to pop through the skin on the back of [Lepper's]

hand." Nurse Piph took Lepper's vital signs, all of which were within normal

ranges.

Nurse Piph telephoned Dr. Nields and explained Lepper's injury. According

to Lepper, Nurse Piph told Dr. Nields that she felt Lepper should be taken

somewhere for immediate treatment. Dr. Nields instructed Nurse Piph to schedule

Lepper an appointment to see an orthopedic doctor and for an X-ray. Nurse Piph

fashioned a splint for Lepper from tape, gauze, and sticks. Nurse Piph's fracture

assessment form noted that Lepper was given an ice pack and instructed on pain

control, keeping his hand elevated, and care of his splint. Lepper was told to report

immediately any tingling, numbness, skin discoloration, coolness, or increase of

---

[2]Dr. Nields indicated that "crepitus" refers to "a peculiar crackling, crinkly, or grating feeling or sound under the skin . . . or in the joints."

3

severe pain. The fracture assessment form indicated Lepper received 400 mg ibuprofen for pain, but Lepper asserts he was sent back to his cell without any pain medication.

A few hours later, the splint began to cut off Lepper's circulation, causing him pain. A nurse removed the splint and crafted another one from tape, gauze, and cardboard. The nurse gave Lepper an ice pack, a sling, and packets of 100 mg ibuprofen. Lepper was instructed on pain management, the ibuprofen, and the importance of wearing the sling.

On the following day, July 9, 2007, Dr. Nguyen examined Lepper. Lepper states that Dr. Nguyen mis-diagnosed Lepper's injury as a "boxer's fracture." But Dr. Nguyen's notes from his July 9, 2007 examination of Lepper indicate "deformity of [right] hand – (dislocation)," and contain no mention of a possible fracture. Dr. Nguyen's notes also state, "emergency refer to Dr. Ong for evaluation." Dr. Nguyen noted a limited range of motion of Lepper's fingers, but no bruising, and that a radial pulse was present. Dr. Nguyen requested an X-ray, which was performed the next day. The findings indicated that there was "a dislocation of the fourth metacarpal carpal articulation" and that the "[r]emaining soft tissues and bony structures [were] unremarkable." Lepper's hand was left in the splint. Lepper asked for stronger pain medication, but claims he was again

4

provided with 100 mg ibuprofen packets, which "did nothing to ease [his] pain and suffering." Dr. Nguyen's notes indicate he prescribed Lepper Tylenol with Codeine for pain.

On July 12, 2007, Lepper was taken to RMC to see an orthopedic surgeon, Dr. Ong. Dr. Ong took a second set of X-rays, which showed, as Dr. Nguyen diagnosed, that Lepper had suffered a dislocation – specifically, a dorsal dislocation of the carpal-metacarpal joint of his right ring finger, as well as a possible partial dorsal dislocation of the carpal-metacarpal joint of his right little finger. No associated fracture was evident. Dr. Ong told Lepper that surgery would be needed. Dr. Ong put a splint on Lepper's hand, placed his arm in a sling, and set a date for Lepper's surgery. Dr. Ong prescribed oxycodone and 600 mg ibuprofen for pain, and gave Lepper medical passes for no handcuffs, a low bunk, an extra pillow, and restricted activity.[3]

Dr. Ong performed Lepper's surgery on August 2, 2007. The surgery involved removal of calcium buildup, relocation of bones, and placement of two temporary surgical pins into Lepper's hand. Dr. Ong renewed Lepper's

---

[3]Lepper states that Dr. Ong told him "that dislocated bones are normally immediately re-located since it requires surgery to repair a dislocation once twenty-four hours has elapsed." Dr. Ong is not a defendant in this action and did not furnish an affidavit. As discussed later, Lepper has introduced no medical evidence of whether it would have been possible to somehow non-surgically re-locate the bones in his hand.

5

prescriptions for oxycodone and 600 mg ibuprofen.

On August 3, 2007, a Friday, Lepper awoke in severe pain. Starting at 9:15 a.m, Lepper repeatedly asked Nurse Bell for his oxycodone. At 4:00 p.m., Nurse Bell told Lepper that CCI was out of oxycodone and he would have to wait until the following Monday. Lepper asked the chaplain for help. The chaplain called Assistant Warden Willis, who said there was nothing he could do. The chaplain then called Lepper's grandmother. Lepper's grandmother and mother called CCI and spoke to the officer in charge. Two hours later, Lepper received his medication.[4]

On August 23, 2007, Lepper's stitches were removed and his prescriptions were renewed. Lepper states he again had trouble getting his medication. On August 29, 2007, he filed a grievance indicating he had gone six days without getting his prescribed medication. Dr. Nguyen responded that his prescription was being re-faxed to the pharmacy and that he should get his pain medications soon.[5]

---

[4]Lepper also stated that, on several occasions, Nurse Bell neglected to bring him his medications at the prescribed times. However, Lepper also explained that an assistant warden then personally told Nurse Bell to give Lepper his medications on time. Lepper filed affidavits from two inmates, both of whom stated that on one occasion, Nurse Bell left Lepper's medication "on the grill gate" at the entrance to "H-dorm's PM unit." However, Lepper does not affirmatively state he did not get the medication left on the grill gate.

[5]Dr. Nguyen testified that he did not recall being informed that CCI ran out of oxycodone in July or August 2007, that it was "a rare occasion that a prescribed medication is unavailable," but that because CCI had to "deal[] with thousands of prescriptions this situation may occur."

6

On September 20, 2007, Dr. Ong removed Lepper's surgical pins. Lepper states that Dr. Ong informed him he would have to undergo months of physical therapy, and that he may never regain full use. Lepper claims that as of February 2008, he had regained only 50% use of his right hand.

## B.    District Court Proceedings

Lepper filed this lawsuit under § 1983, claiming the defendants violated his Eighth and Fourth Amendment rights by showing deliberate indifference to his serious medical needs. Specifically, Lepper alleged that Dr. Nguyen and Dr. Nields denied him emergency medical care, thereby causing him to need surgery. Lepper alleged Willis and Singer "showed deliberate indif[f]erence by not meeting the requirements of care, custody, and control" of inmates.

The defendants moved for summary judgment, and the district court granted the motion. The district court concluded, inter alia, that Lepper's allegations as to Dr. Nguyen and Dr. Nields did not rise to the level of deliberate indifference, and that for that reason, his supervisory claims against Singer and Willis also failed.[6]

_____

[6]The district court also concluded that the defendants were immune from suit in their official capacities pursuant to the Eleventh Amendment. Lepper does not challenge this conclusion. As to the defendants in their individual capacities, the district court found they had qualified immunity from suit because Lepper did not show a constitutional violation. See Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (providing that qualified immunity protects government officials sued in their individual capacities for actions taken in the course of their discretionary authority unless the plaintiff: (1) alleges facts that, if true, would constitute the violation of a constitutional right; and (2) shows that the right violated was clearly established). The district court did not reach the clearly established law prong of the qualified

7

## II. DISCUSSION

Prison officials violate the Eighth Amendment when they show deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291 (1976). However, not every claim by a prisoner that he has not received adequate medical treatment will state an Eighth Amendment violation. Id. at 105, 97 S. Ct. at 291. To state a deliberate indifference claim, the plaintiff must allege both an objectively serious medical need and that the defendants acted with deliberate indifference to the need. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). Lepper's hand injury certainly qualifies as an objectively serious medical need. See id. (defining an "serious medical need" as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"). The question is whether the defendants were deliberately indifferent to Lepper's need.

"[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003). The plaintiff must demonstrate more than inadvertence, negligence (even gross

immunity analysis. Nor do we, because as shown below, we agree with the district court that Lepper has not shown a constitutional violation.

8

negligence), or medical malpractice. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). Similarly, "a simple difference in medical opinion" is not enough to prove deliberate indifference. Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

Under the above standards, Lepper has not shown the defendants were deliberately indifferent to his serious medical needs. Lepper was examined by Nurse Piph (who consulted with Dr. Nields) promptly after injuring his hand. The next day, Dr. Nguyen examined Lepper's injury and ordered an X-ray. Three days later Dr. Ong, an orthopedic doctor, examined Lepper, again took X-rays, and scheduled surgery. So it is undisputed that Lepper received prompt medical care.

We recognize that the crux of Lepper's claim is that he would not have needed surgery and had the same degree of loss of use of his right hand, if the defendants had not delayed his treatment and had performed a non-surgical re-location of his bones within twenty-four hours. A delay in providing medical treatment can constitute deliberate indifference. Estelle, 429 U.S. at 104-05, 97 S. Ct. at 291. However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Townsend v. Jefferson County, 582 F.3d 1252, 1259 (11th Cir. 2009). Lepper has

9

not submitted any medical evidence that his injury to his hand could have been fixed by non-surgical re-location of his bones or that his injury would be less severe if his medical treatment had been different. Although Lepper states that Dr. Ong told him that dislocated bones are normally re-located immediately because surgery is required after twenty-four hours, this hearsay comment alone is insufficient. In any event, Dr. Ong's alleged comment was only a generalization about dislocated bones, not verifying medical testimony (1) that immediate non-surgical re-location was actually possible in Lepper's case, (2) that Lepper actually suffered a detriment from not having non-surgical re-location, or (3) what the nature and extent of the detriment was.

As to Lepper's contentions regarding pain medication, Lepper also has not established deliberate indifference. Lepper alleged that: (1) CCI ran out of oxycodone on August 3, 2007, leaving him without the drug that day; and (2) three weeks after his August 3, 2007 surgery, Lepper went six days (August 23-29) without receiving his prescribed medication. However, Lepper did not establish that the shortage of oxycodone on August 3, 2007 was the result of anything more than negligence. In addition, prison officials did take some actions to remedy the problems, as Lepper was given a dose of oxycodone on the evening of August 3, 2007 after his mother and grandmother talked to the officer in charge. And after

10

Lepper filed the grievance about his failure to receive pain medication, Dr. Nguyen had Lepper's prescription re-faxed to the pharmacy and told Lepper he should get his medication soon. Lepper's allegations may constitute negligence, or even gross negligence, but they do not support a finding of deliberate indifference. See Bozeman, 422 F.3d at 1272 ("[G]ross negligence fails to satisfy [the] state-of-mind requirement for deliberate indifference.").

Finally, Lepper's supervisory liability claims against Willis and Singer fail because Lepper has not shown a constitutional violation by persons under their supervision or control. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1308 (11th Cir. 2009) (recognizing that a supervisor may be liable under § 1983 for the unconstitutional acts of his subordinates if (1) he personally participates in the constitutional violation, or (2) a causal connection exists between his conduct and the constitutional violation, but stating that "claims under a theory of supervisory liability fail [if] the underlying § 1983 claims fail").

## III. CONCLUSION

For the reasons set forth above, we affirm the district court's grant of summary judgment to the defendants.

**AFFIRMED.**