[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15169

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 20, 2012
JOHN LEY
CLERK

D. C. Docket No. 08-01629 CV-CLS-RRA

CHARLES WILLIAM DUNCAN,

Plaintiff-Appellant,

versus

CORRECTIONAL MEDICAL SERVICES,
BRACKNER, Nurse Practitioner,
LINDA CHEW, Nurse,
COLEMAN, Nurse,
GOODWIN, Nurse,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 20, 2012)

Before DUBINA, Chief Judge, CARNES, Circuit Judge, and FORRESTER,[*] District Judge.

PER CURIAM:

Appellant Charles William Duncan appeals the district court's grant of summary judgment in favor of Appellees Correctional Medical Services, Inc. ("CMS") and a number of medical personnel employed by CMS at the Childersburg Community Work Center ("CCWC").[1] Duncan contends that while he was an inmate incarcerated at the CCWC, he was denied several prescribed medications that he needed daily to treat medical problems including coronary artery disease, hypertension, high cholesterol, and gastric ulcer. Duncan alleges this denial led to a number of instances where he suffered chest pains and required emergency hospital treatment. CMS responds that it provided the vast majority of Duncan's medications, but that shortages beyond its control occasionally led to delays. Following a motion for summary judgment filed by CMS and the individual appellees, the district court found that Duncan had failed to produce evidence of deliberate indifference to a serious medical need and dismissed his action. For the reasons stated below, we conclude that Duncan has presented

---

[*]Honorable J. Owen Forrester, United States District Judge for the Northern District of Georgia, sitting by designation.

[1]The individual appellees are Joseph Brackner, Tameka Rivers, Linda Chew, and Rachelle Goodwin.

2

enough evidence to create a genuine issue of material fact whether CMS acted with deliberate indifference to a serious medical need.[2]

I.

At all times relevant to the appeal, Duncan was a prisoner of the State of Alabama. In January 2008, he was transferred from the Bibb County Correctional Facility to the CCWC. Duncan's § 1983 claim arises from events occurring from March 2008 until September 2008, when he filed his sworn complaint. He contends he was not provided with his prescription medications for extended periods of time and as a result suffered pain and discomfort and had to be rushed to the hospital on multiple occasions due to severe chest pain. It is undisputed that Duncan suffers from several medical conditions that require daily medication including coronary artery disease, hypertension, high cholesterol, and a gastric ulcer. Overall, Duncan contends he was without his prescription medications for the following periods of time: Zocor, cholesterol medication, 87 days; isosorbide, heart medication, 172 days; hydrochlorothiazide (HCTZ), a diuretic/blood pressure medicine, 116 days; nitroglycerin, heart medication, 285 days; lisinopril, blood pressure medication, 30 days; Protonix, gastric ulcer medication, 120 days;

---

[2]At oral argument, Duncan's attorney explicitly conceded that the district court's summary judgment order was correct as to the individual appellees. We therefore affirm that portion of the district court's order.

erythromycin, an antibiotic, 30 days; Flagyl, an antibiotic, 30 days; aspirin, 81 days; Prilosec, gastroesophageal reflux medication, 62 days;[3] and metoclopramide, esophageal sore medication, 30 days. As a result, Duncan contends that he suffered chest pains and had to be rushed to the hospital on 5 occasions (once in March, April, June, July, and August).

In response to these allegations, a magistrate judge required CMS to file a Special Report, providing its response to Duncan's complaint. In its report, which the magistrate judge construed as a motion for summary judgment, CMS argued that the record did not support the vast majority of Duncan's allegations. CMS only admitted to lapses in Duncan's Zocor and lisinopril, and it argued that those delays resulted from shortages in outside pharmacies that were beyond its control. Neither party, however, can take full solace in the record, as it contradicts some of Duncan's contentions while supporting more than CMS admits. All told, taken in the light most favorable to him, the record supports Duncan's allegations that he did not receive the following medications during the individually specified times[4]:

---

[3]Duncan also notes that he was without omeprazole for 30 days, but this drug is the generic name for Prilosec.

[4]For purposes of this summary, we assume that inmates must sign for any medications received. Thus, if there is not a signature associated with a particular medication, we assume Duncan did not receive that medication. [*See* R. 11-2 at 2 aff. of Linda Chew; R. 11-3 at 2, aff. of Tameka Coleman; R. 11-4 at 2, aff. of Rachelle Goodwin]. We make this assumption, however, only for our present purposes, and Duncan will have the burden of proving at trial that he actually

4

(1) Zocor, July 18–August 20 2008 (approx. 22 days);

(2) nitroglycerin, January–August 2008 (approx. 210 days);[5]

(3) lisinopril, May 2008 and August 18–September 3 2008 (approx. 46 days); and

(4) Protonix, May–June 2008 (approx. 60 days).[6]

Duncan asserts that since the filing of his complaint, he has received all his prescription medications. Duncan further asserts that since receiving his medications he has not experienced any chest pains or esophageal spasms nor been taken to the hospital.

## II.

This court reviews a district court's grant of summary judgment *de novo*. *Bozeman v. Orum*, 422 F.3d 1265, 1267 (11th Cir. 2005). In doing so, we view all facts and reasonable inferences in the light most favorable to the non-moving

did not receive the medications.

[5]While Duncan did not sign for nitroglycerin during this period, Duncan's prescription for nitroglycerin is not for a daily-dose, but rather is prescribed on an as-needed basis. Duncan has not alleged that he requested nitroglycerin and was denied it.

[6]The record also supports Duncan's allegations that he did not receive erythromycin or Flagyl in July 2008. However, these medications are antibiotics, and since Duncan has made no contention that a lack of antibiotic caused his chest pains or any other notable discomfort or symptoms, we omit them from our discussion.

party.  *Id*.  Summary judgment is appropriate if there are no disputes as to material facts.  *Id*.

## III.

"Medical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal quotation marks omitted).  "To prevail on a deliberate indifference to serious medical need claim, [p]laintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).

Thus, deliberate indifference has both an objective and a subjective component.  The objective component requires a plaintiff to demonstrate an objectively serious medical need.  *Id*.  A "serious medical need" is one that "if left unattended, poses a substantial risk of serious harm" and can be either: (1) "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"; or (2) one where "a delay in treating the need worsens the condition." *Id*. at 1307 (internal quotation marks omitted).  "An inmate who complains that

6

delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9, 122 S. Ct. 2508, 2515 n.9 (2002).

The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, that need. *Id*. at 1191. To prove the requisite intent, a plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Mann*, 588 F.3d at 1307 (internal quotation marks omitted). Deliberate indifference may be "inferred from an unexplained delay in treating a known or obvious serious medical condition." *Harris v. Coweta Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994).

Both parties have accepted, for the sake of summary judgment, that Duncan met his burden of showing the objective component and established a serious medical need based on his coronary artery disease, hypertension, high cholesterol, and gastric ulcer.[7] Thus, while the seriousness of Duncan's medical need may

---

[7]We have doubts about whether Duncan has actually made a showing of a serious medical need as it relates to the delay in providing him his prescription medications or whether the record supports his claims that his hospital visits were caused by those delays. But because the objective

7

become a disputed issue at some later time, for our purposes, we assume the objective component has been met and move to the subjective element of deliberate indifference.

Duncan argues a genuine issue of fact exists as to whether CMS was deliberately indifferent to his medical needs, in violation of 42 U.S.C. § 1983 and the Eighth Amendment. Duncan asserts CMS failed to ensure or take adequate measures to ensure he was given his prescription medications, and this failure placed him in severely painful and life-threatening situations on several occasions. Duncan argues that because he was denied his medications, he suffered chest pains and esophageal spasms which increased his risk of having a heart attack. Furthermore, Duncan argues that since CMS did not submit any documentation indicating if or why the outside pharmacy experienced any shortages of his medications, it has failed to submit evidence to explain the extended durations Duncan did not receive his medications. Accordingly, he argues summary judgment was not appropriate.

CMS contends it was not deliberately indifferent to Duncan's medical needs because it never denied nor intentionally delayed giving Duncan his medications while he was incarcerated at CCWC. CMS acknowledges two times when Duncan

component is not before us, we do not address those concerns.

8

did not receive his prescription medications due to a shortage or delay experienced by the outside pharmacy from which CMS orders the medications. CMS admits Duncan did not receive Zocor for a short period during July 2008 and lisinopril for two weeks in August 2008. CMS further states that Duncan always received medical attention whenever it was sought, i.e., no one ever refused to see, treat, or care for Duncan, and he was always transferred to an outside medical facility when he complained of chest pains. Finally, CMS notes that no outside physician ever diagnosed Duncan's chest pains as being caused by not receiving certain medications.

Viewing the facts in Duncan's favor, it appears that he may be able to show that he did not receive a total of three prescriptions which have a possible connection to his chest pains: Zocor (22 day delay in July–August); lisinopril (May; gap in prescriptions for two weeks in August); and Protonix (2 month delay in May and June).[8] Thus, the record indicates that Duncan was denied more than just the Zocor and the lisinopril CMS acknowledges he did not receive due to

---

[8]Duncan also claims to have not received his nitroglycerin for a total of eight months. As noted above, however, Duncan's prescription for nitroglycerin is not for a daily-dose, but rather is prescribed on an as-needed basis. Duncan has not alleged that he requested nitroglycerin and was denied it.

delays from an outside pharmacy.  CMS has failed to offer any explanation for the additional delays.

The dates of the missed prescriptions do not correspond to the March and July dates Duncan suffered chest pain and had to be taken to the hospital.  At the time of the March 24 hospital trip, Duncan was up to date on all of his medications and there is no evidence to suggest that any deliberate act of the defendants caused that trip to the hospital.  On July 16, Duncan was fully up to date on all of his prescriptions, with the possible exceptions of his two antibiotics, which are not alleged to have any connection to his chest pains.

There is, however, a potential inference that the June 13 and August 28 hospital visits were caused by Duncan's failure to receive medications. As of June 13, Duncan had not received Protonix for more than a month.  It is significant that Protonix was the treatment given to Duncan for his chest pain when his symptoms first presented.  [R.11-1 at 45.]  A similar inference can be made for the August 28 visit.  On August 28, Duncan had been out of lisinopril for 10 days and had only recently been back on Zocor after not having it for 22 days.

We are initially reluctant to consider a claim of deliberate indifference where CMS promptly responded to any medical emergencies that Duncan suffered.  We have held that "when a prison inmate has received medical care,

courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). Here, there is no question that Duncan ultimately received all of his prescribed medications and was quickly treated for any symptoms related to his heart, blood pressure, ulcer, or reflux. And if we were dealing with an isolated instance where Duncan had not received the proper medication and then suffered a medical emergency, there clearly would be no showing of deliberate indifference. But it is certainly also the case that prison officials may not wholly ignore an inmate's prescription needs and then hope to contain symptoms that may occur without warning and result in immediate serious injury or death. Duncan's treatment lies somewhere in the middle.

Nevertheless, under the specific facts of this case, we conclude that Duncan has presented sufficient evidence to support an inference that CMS acted with deliberate indifference. CMS has conceded for the purpose of this summary judgment motion that Duncan suffers from a serious medical condition. CMS, on several occasions, failed to provide medication to treat that condition, despite Duncan's repeated trips to the emergency room with chest pains. Finally, the evidence taken in the light most favorable to Duncan supports a causational tie between the failure of CMS to provide medication and Duncan's trips to the emergency room. While we are not convinced that Duncan ultimately can

11

successfully show deliberate indifference, under the facts of this case, whether he has met the subjective component of his claim is a question for a jury to decide.

IV.

For the aforementioned reasons, we affirm the district court's order granting summary judgment to the individual appellees. As to CMS, however, we reverse the district court's grant of summary judgment and remand this case for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED**