[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11069
Non-Argument Calendar

_____

D. C. Docket No. 4:11-cv-00088-RH-WCS

STEPHEN GANSTINE,

Plaintiff-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
DR. ERLINDA PEREZ,

Defendant-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(December 26, 2012)

Before TJOFLAT, JORDAN, and KRAVITCH, Circuit Judges.

PER CURIAM:

Stephen Ganstine, appearing *pro se*, appeals the district court's grant of

summary judgment in favor of the defendants on his civil rights claims. Mr. Ganstine, a former inmate of the Florida Department of Corrections, alleged that Dr. Erlinda Perez, a prison physician, was deliberately indifferent to his serious medical needs. Mr. Ganstine also alleged multiple violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, against the Secretary of Florida's Department of Corrections (DOC). After a review of the record and the parties' briefs, we affirm.[1]

## I.

Mr. Ganstine began his term of incarceration on March 1, 2007. At that time, he suffered from a variety of ailments, including hypertension, sleep apnea, diabetes, gout, and obesity. The DOC initially transported him to the inmate Reception and Medical Center (RMC), a temporary facility where inmates are housed until they are transferred to a more permanent facility. Upon his arrival at the RMC, Mr. Ganstine was briefly examined by a physician's assistant who noted his ailments and his use of a continuous positive airway pressure (CPAP) machine, which assists his breathing during sleep.

Several days later, Dr. Perez examined Mr. Ganstine for over an hour.

---

[1] We note at the outset that Mr. Ganstine's appellate briefs raise multiple issues that exceed the scope of his complaint. Although we liberally construe *pro se* briefs, we do not address any arguments that Mr. Ganstine failed to raise below. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

During her examination, she concluded that Mr. Ganstine's diabetes and hypertension were "urgent issues that required immediate attention." R:44-3 at 5. Therefore, she continued his medications for these conditions. For his gout, she prescribed shoe in-soles to provide support. Regarding Mr. Ganstine's complaint of sleep apnea and his use of a CPAP machine, Dr. Perez observed that his lungs were clear and his breathing was normal. Accordingly, she concluded that sleep apnea was not an acute issue and additional tests could wait until Mr. Ganstine was transferred to a permanent facility. She expected Mr. Ganstine to be transferred within one to two weeks.

Although his records indicated no history of back injury, Mr. Ganstine complained to Dr. Perez of chronic and significant back pain. He also told Dr. Perez that he needed a wheelchair because he was unable to handle the amount of walking and standing required by the DOC. Dr. Perez did not observe any problems with Mr. Ganstine's ability to walk, but an x-ray of Mr. Ganstine's back showed a compression deformity. As a result, she prescribed a walker.

Mr. Ganstine remained at the RMC for two months. During his time there, he did not receive a wheelchair or a CPAP machine. Mr. Ganstine alleges that the guards at the RMC harassed him because he used a walker. The guards, he says, routinely made him walk farther and stand longer than non-disabled inmates.

3

Mr. Ganstine was eventually moved to Gulf Correctional Institution Annex, where he remained until his release in February of 2010. There, Mr. Ganstine received a wheelchair, but he continued to experience problems. He alleges that he was unable to access the recreational yard and other facilities because they were inaccessible to wheelchairs. He also alleges that the prison guards at Gulf Correctional retaliated against him by giving him extra work assignments and confiscating his notes in violation of the ADA.

## II.

We review the district court's grant of summary judgment, *de novo*, viewing all the evidence and drawing all reasonable factual inferences in favor of Mr. Ganstine, the nonmoving party. *See Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

The Eighth Amendment's prohibition against cruel and unusual punishment forbids prison officials from being deliberately indifferent to the serious medical needs of inmates. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison doctor's failure to treat, or inadequate treatment, or delay in treatment may

4

constitute an Eighth Amendment violation, thereby giving rise to a claim under 42 U.S.C. § 1983. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). But not every medical claim rises to the level of a constitutional violation. *See id.* at 1254 (noting that a prisoner must show something more than mere negligence).

To succeed on an Eighth Amendment claim of deliberate indifference, Mr. Ganstine was required to show that (1) he had an objectively serious medical need; (2) Dr. Perez made an objectively insufficient response to that need; (3) Dr. Perez had a subjective awareness of facts indicating a substantial risk of serious harm; and (4) Dr. Perez inferred that action was required based on those facts. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). This circuit has described the subjective component of the deliberate indifference analysis as a "subjective intent to punish." *See id.* The record here does not reflect any intent by Dr. Perez to consciously disregard a serious risk or to punish Mr. Ganstine. Accordingly, the district court properly granted summary judgment in favor of Dr. Perez on Mr. Ganstine's Eighth Amendment claims.

Mr. Ganstine argues that Dr. Perez was deliberately indifferent to his need for a CPAP machine and a wheelchair.[2] On appeal, he asserts that summary

---

[2] In the district court, Mr. Ganstine also argued that Dr. Perez's denial of diabetic shoes was deliberate indifference. But he does not raise this issue on appeal, and therefore has abandoned it. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008); Fed. R. App. P. 28(a)(5) (requiring issues to be raised in appellant's initial brief).

judgment on these issues was inappropriate because a factual dispute exists as to the amount of time that inmates typically remain at the RMC before being transported to a permanent facility. This argument, however, is misplaced. There is no indication in the record that *Dr. Perez* believed Mr. Ganstine would remain at RMC for longer than a few weeks, and Mr. Ganstine's deliberate indifference claim depends, in part, on the subjective intent of Dr. Perez. *See Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (per curiam) (requiring subjective knowledge of a serious risk and disregard of that risk). Mr. Ganstine points to his own personal experience and the deposition testimony of an RMC nurse who indicated that prisoners could remain at the RMC for months. Yet this evidence does not contradict Dr. Perez's stated belief that Mr. Ganstine would be transferred to a permanent facility within a matter of weeks, at which time a primary care physician could "assess him further and make any necessary referral to a pulmonologist." R:44-3 at 6. Thus, Mr. Ganstine fails to demonstrate that Dr. Perez knew of any facts indicating a substantial risk that required immediate attention.

Matters of medical judgment do not form an appropriate basis for liability under the Eighth Amendment. *See Estelle*, 429 U.S. at 107.[3] The undisputed facts

---

[3] In his appellate brief, Mr. Ganstine argues that Dr. Perez's decisions were motivated by non-medical factors and that the DOC grievance process was deficient in addressing his medical needs. Because he did not raise these issues before the district court, we will not consider them on appeal. *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1140 (11th Cir. 2007).

6

show that Dr. Perez examined Mr. Ganstine for more than an hour, that Mr. Ganstine displayed no obvious signs of sleep apnea or physical inability to walk, and that Mr. Ganstine provided no medical records indicating an imminent need for a wheelchair or a CPAP machine. Viewing the facts in the light most favorable to Mr. Ganstine, Dr. Perez certainly knew of his complaints regarding his perceived need for a CPAP machine and a wheelchair. However, this knowledge does not suggest that Dr. Perez was aware of, let alone disregarded, a substantial risk of serious harm. A difference in medical opinion between a doctor and an inmate as to the inmate's diagnosis or course of treatment does not establish deliberate indifference. *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Dr. Perez, in her medical judgment, concluded that the best course of action was to prescribe a walker rather than a wheelchair, and to allow a primary care physician to assess Mr. Ganstine's sleep apnea. Based on the undisputed facts, summary judgment was appropriate.

## B.

Title II of the ADA, which prohibits public entities from discriminating against disabled individuals, *see* 42 U.S.C. § 12132, applies to prisoners in state correctional facilities. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). In his complaint, Mr. Ganstine asserted that the DOC violated the ADA by (1)

7

denying access to or benefits of various recreational activities and facilities, and (2) retaliating against him for exercising his rights under the ADA.[4]

In opposing summary judgment, Mr. Ganstine alleged that the DOC violated the ADA in other respects, including failure to honor his "no prolonged standing pass," requiring him to walk longer routes, and giving him extra assignments. *See* R:52 at 34. Based on these facts, he appeared to raise a generalized disability-based harassment claim, which was not affirmatively pled in the complaint. A plaintiff may not, however, "amend" his complaint at the summary judgment stage by raising a new claim. *See Hurlbert v. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings). We therefore confine our review to the denial of access and retaliation claims alleged in the complaint, and consider the facts only to the extent that they support these two claims. *See Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n.4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not amended the complaint). After viewing the facts in the light most favorable to Mr. Ganstine, we

---

[4]On appeal, Mr. Ganstine attempts to argue that the DOC's conduct also violated the Eighth Amendment. Because he did not raise this issue before the district court, we will only consider his ADA claims. *See U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). Additionally, Mr. Ganstine does not attack the district court's determination that the DOC did not violate the ADA by initially failing to provide a CPAP machine and a wheelchair; therefore, he has abandoned this issue on appeal. *See Timson*, 518 F.3d at 874.

affirm the district court's grant of summary judgment.

First, we address Mr. Ganstine's denial of access claim under Title II of the ADA. To state a Title II claim, Mr. Ganstine must prove that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) the exclusion, denial of benefit, or discrimination was by reason of his disability. *See Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

On appeal, the parties do not dispute that Mr. Ganstine is a qualified individual with a disability. The issue, rather, is whether Mr. Ganstine was excluded from or denied the benefits of certain services and programs. Mr. Ganstine claims that he was unable to access certain areas of the prison because of his disability and therefore, was unable to lift weights. The district court rejected his denial of access claim because Mr. Ganstine admitted in his deposition that inmate orderlies were available "most of the time" to push his wheelchair wherever he needed to go. R:44-12 at 57-58. At one point, Mr. Ganstine was even assigned two orderlies. R:44-12 at 57, 60. Mr. Ganstine further admitted that he was "reasonably" able to get where he wanted to go with the orderlies, or on a rare occasion, he pushed himself in the wheelchair. R:44-12 at 57. Additionally, in the

9

one instance where Mr. Ganstine complained about an orderly's failure to push him, the DOC assigned a new orderly. R:44-12 at 54–55.[5] Based on his own admissions, a reasonable jury could not have concluded that the DOC denied Mr. Ganstine access because of his disability.

Second, we address Mr. Ganstine's retaliation claim. To establish a prima facie case of retaliation, Mr. Ganstine must show that (1) he engaged in statutorily protected activity; (2) the DOC was aware of this activity; (3) the DOC took adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action. *See Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004). The ADA's anti-retaliation provision allows retaliation claims against public entities. *Id.* at 1218–19.[6] Mr. Ganstine, however, failed to

---

[5] On appeal, Mr. Ganstine alleges that the orderlies would only push him if he paid them. Notably, this assertion is absent from his complaint and from his response to the DOC's summary judgment motion. We take no position on whether these allegations, if true, raise a separate violation of the ADA. No such violation was alleged before the district court, so we cannot address it for the first time on appeal. Additionally, Mr. Ganstine admitted that he never complained about this issue to anyone at the DOC. R:44-12 at 62.

[6] We have not yet determined whether the Eleventh Amendment bars a Title V ADA retaliation claim for damages against a state. *Cf. United States v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."); *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001) (holding that Congress did not validly abrogate states' sovereign immunity for private suits seeking money damages under Title I of the ADA). We also have not addressed whether compensatory damages, which Mr. Ganstine seeks, are available as a remedy in ADA retaliation cases. *See Rumler v. Dep't of Corr.*, 546 F. Supp. 2d 1334, 1339-43 (M.D. Fla. 2008). Because the district court did not directly address these issues and because Mr. Ganstine's ADA claims ultimately fail on other grounds, we do not reach these issues today.

establish a prima facie case of retaliation against DOC.

Mr. Ganstine contends that a correctional officer gave him extra work assignments and confiscated his notes in retaliation for filing a grievance.[7] Notably, these specific factual allegations are absent from his complaint. But assuming without deciding that Mr. Ganstine engaged in protected activity by filing a grievance with the DOC, he fails to show that he was subjected to adverse action.

"An adverse action must meet a 'threshold level of substantiality' before it can serve as the basis of a retaliation claim." *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004) (quoting *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)). If the defendant's action had no tangible, negative effect on the plaintiff, no adverse action exists. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001). Mr. Ganstine did not suffer adversely because a DOC guard allegedly confiscated his notes. During the summary judgment hearing, Mr. Ganstine's counsel admitted that Mr. Ganstine was still able to bring his claims, without the assistance of the notes. *See* R:78 at 18 ("I'm not taking the position that he is unable to bring a claim because he doesn't have his notes."). Further, Mr. Ganstine admitted in his deposition that he had created a separate record of his

---

[7] Mr. Ganstine further alleges that his First and Fourth Amendment rights were violated when the officer confiscated his notes. We do not address these claims, which are asserted for the first time on appeal.

11

notes. R:44-12 at 114 ("Fortunately I had transcribed most of [my notes] and shipped them out."). Any alleged confiscation of Mr. Ganstine's notes did not rise to the level of adverse action sufficient to prove retaliation. As to the extra work assignments, Mr. Ganstine admitted in his deposition, and in his appellate briefs, that the officer "slacked off big time," and assigned him to a regular work assignment after he complained to the DOC. *See* R:44-12 at 113; Appellant's Br. at 34. Any alleged extra work assignments do not meet the threshold level of substantiality sufficient to constitute an adverse action that would give rise to a retaliation claim.

## III.

The district court properly granted summary judgment on Mr. Ganstine's claims.

**AFFIRMED.**